HÉCTOR LUGO SÁNCHEZ, demandante, recurrido y recurrente, *v.* AUTORIDAD DE LAS FUENTES FLUVIALES DE PUERTO RICO, demandada, recurrente y recurrida.

*Números:* R-76-116, R-76-128 *Resuelto:* 31 de marzo de 1977

*Carlos M. Díaz Lamoutte,* abogado de la Autoridad de las Fuentes Fluviales de Puerto Rico; *Jorge Meléndez Vela* y *Luis A. Archilla Laugier,* abogados del demandante, recurrido y recurrente.

PER CURIAM: Los Arts. 19 y 20 de la Ley de Compensaciones por Accidentes del Trabajo, soportes de la estructura básica del sistema de fondo exclusivo y seguro obligatorio, excluyen la demanda basada en negligencia de tercero

contra un patrono estatutario expresamente exento de la obligación de asegurar, en aquellos casos en que se reclaman daños sufridos por un empleado de su contratista asegurado.

La recurrente Autoridad de las Fuentes Fluviales contrató con Zachry International la construcción de unas plantas termoeléctricas que aun después de terminadas y entregadas recibían beneficio de mantenimiento por la constructora. Surgió la necesidad de reparar una válvula de la tubería de vapor y en protección de sus empleados, Zachry avisó desde el día anterior a la Autoridad para que eliminara todo vapor de la línea. Al llegar a la planta, el empleado de Zachry encargado de la reparación, preguntó al ingeniero de la Autoridad a cuyo cargo se hallaba la instalación, si la línea estaba libre de vapor contestando éste que sí lo estaba. Descansando en dicha aseveración, el empleado de Zachry empezó a desmontar la válvula y se escapó un chorro de vapor que lo derribó causándole quemaduras graves. Toda vez que la contratista Zachry tenía su personal asegurado mediante póliza expedida por el Fondo del Seguro del Estado, la víctima del accidente fue compensada bajo dicha póliza.

Luego de compensado por el Fondo, el obrero lesionado inició acción de daños y perjuicios contra su patrono estatutario la Autoridad de las Fuentes Fluviales fundada en negligencia de ésta por mantener vapor en la línea que él había de intervenir y en la falsedad de la información del ingeniero que lo indujo a creer que no había riesgo de vapor en la obra de reparación. Invoca como fuente y fundamento de su demanda por daños el Art. 31 de la Ley de Compensaciones por Accidentes del Trabajo (11 L.P.R.A. sec. 32) que en lo pertinente dispone: [1] "32.—RESPONSABILIDAD DE TERCERO; SUBROGACIÓN.—En los casos en que la lesión, enfermedad pro-

---

[1] Este mismo Art. 31 autoriza la subrogación del Fondo del Seguro del Estado en los derechos del obrero contra "tercero" como medio de recuperar los gastos incurridos. En el presente caso el Fondo no se subrogó en evidente reconocimiento del status patronal estatutario de la Autoridad de las Fuentes Fluviales.

fesional o la muerte que dan derecho de compensación al obrero, empleado o sus beneficiarios, de acuerdo con este Capítulo, le hubiere provenido bajo circunstancias que hicieren responsables a tercero de tal lesión, enfermedad o muerte, el obrero o empleado lesionado o sus beneficiarios podrán reclamar y obtener daños y perjuicios del tercero responsable de dicha lesión, enfermedad o muerte dentro del año subsiguiente a la fecha en que fuere firme la resolución del caso por el Administrador del Fondo del Seguro del Estado, y éste podrá subrogarse en los derechos del obrero, empleado o sus beneficiarios para entablar la misma acción. . . ."

■ La cuestión a decidir estriba en si Fuentes Fluviales es un "tercero" causante del daño o lesión y como tal susceptible a la demanda por negligencia contra ella entablada. La contestación la hallamos en el Art. 19 de la Ley (11 L.P.R.A. sec. 20) que ordena: "Todo patrono asegurado al dar cuenta con sus nóminas anuales, deberá incluir en tales nóminas los salarios pagados a todos los obreros y empleados que estuvieren trabajando o fuere a emplear bien por ajuste, o ya bajo una persona con quien ajustó el patrono o bajo un contratista o subcontratista independiente empleado o contratado por dicho patrono, y toda cuenta, o impuesto cobrado por el Estado se basará sobre la nómina corriente del patrono, en las cuales deberán estar incluidos los trabajadores antes mencionados; Disponiéndose, que esta disposición no será aplicable a los patronos para quienes se hiciere trabajo por un contratista independiente que estuviere asegurado como patrono de acuerdo con las disposiciones de este Capítulo."

¿Qué otro propósito que no sea extender inmunidad al patrono estatutario, tiene la expresión del legislador en el Art. 19 al efecto de que "esta disposición [de incluir en sus nóminas los salarios de todos los obreros y empleados] no será aplicable a los patronos para quienes se hiciere trabajo por un contratista independiente que estuviere asegurado como patrono de acuerdo con las disposiciones de este Capítulo.?"

■ Es inaceptable la teoría de la parte recurrida conducente a la conclusión de que en este Art. 19 el legislador le dice al patrono [2] estatutario: "no tiene que asegurar los obreros de su contratista independiente asegurado, pero si ocurre un accidente usted responde." Se estaría negando el principio rector de todo el sistema de seguro obrero en Puerto Rico enunciado en su Art. 20 (11 L.P.R.A. sec. 21) así: "Cuando el patrono asegure sus obreros y empleados de acuerdo con el presente Capítulo, el derecho aquí establecido para obtener compensación será el único remedio en contra del patrono, aun en aquellos casos en que se haya otorgado el máximo de las compensaciones o beneficios de acuerdo con el mismo; . . . ." La característica de remedio único fue afirmada por la Ley Núm. 103 de 21 de junio de 1968 que añadió a este artículo la cláusula: "aun en aquellos casos en que se haya otorgado el máximo de las compensaciones o beneficios. . . ."

Dentro de su relación contractual con la constructora Zachry, la Autoridad de las Fuentes Fluviales es un patrono, llámese principal o "estatutario" como en *Colón Santiago* v. *Comisión Industrial*, 97 D.P.R. 208 (1969). La recurrente no es un tercero por ser parte inextricablemente vinculada al contratista independiente y al empleado de éste dentro del orden jurídico dictado por el Art. 19 de la Ley. El principal contratante o dueño de la obra no puede considerarse tercero, dice Schneider. [3] Concurre Larson al dictaminar que en aquellas jurisdicciones como la nuestra y las de cuarenta y tres estados donde la Ley impone responsabilidad al contratista general por las lesiones del obrero del subcontratista no asegurado, el contratista general se convierte en efecto en

---

[2] A los fines del citado Art. 19 o Sec. 20, se denomina a un contratista como el "patrono estatutario" para distinguirle del subcontratista, llamado el "patrono contractual" o "real". *Colón Santiago* v. *Comisión Industrial*, infra.

[3] Schneider, *Workmen's Compensation*, Vol. 3, Sec. 842(e), pág. 215, Tercera Edición (1943).

patrono a los fines de la ley de compensaciones, y es obvio que debe tener inmunidad de patrono y no podrá considerársele "tercero". Larson, *Workmen's Compensation*, Vol. 2A, Sec. 72.31, pág. 14–47, Edición 1976. ([4])

■ Reiterando el principio se resolvió en la jurisdicción federal que el patrono que requiere de su contratista independiente que asegure a sus obreros contra accidentes del trabajo, ha "asegurado" a los obreros del contratista independiente dentro del alcance del Art. 20 que exime al patrono de responsabilidad civil. *Musick* v. *Puerto Rico Telephone Co.*, 357 F.2d 603 (1966). ([5])

■ Toda vez que la recurrente Autoridad de las Fuentes Fluviales tiene por ley la condición de "patrono estatutario" no puede considerársele tercero ni aun bajo la estrecha definición de dicho vocablo adoptada en *López Rodríguez* v. *Delama*, 102 D.P.R. 254, 258 (1974), como incluyendo "a toda persona aparte del empleado lesionado y su patrono asegurado."

■ El tercero sujeto a demanda por daños y perjuicios a los fines del Art. 31 de la Ley es persona extraña, ajena y separada de la interacción jurídica que relaciona al patrono estatutario (A.F.F.) y al contratista (Zachry) con el Fondo

---

([4]) Larson cita un caso de Puerto Rico en el cual el dueño de un barco contrató con un contratista de estibadores para cargar la nave. En ese trabajo se lesionó el obrero demandante quien luego de compensado instó acción por negligencia y condición inepta (*unseaworthiness*) contra el dueño del barco. Se resolvió que siendo empleado de un subcontratista asegurado, su acción no procedía bajo la ley de Puerto Rico. *López Correa* v. *Marine Nav. Co.*, 289 F.Supp. 993 (1968).

([5]) *Musick*, supra, fue revocado en *Colón Núñez* v. *Horn-Linie*, 423 F.2d 952 (1970), en deferencia a sentencia de este Tribunal que la Corte de Circuito interpretó como un cambio en el criterio local. *Colón Núñez*, supra, sin embargo, no es precedente a seguir, por ser contrario a la doctrina constante mantenida en la jurisprudencia y los tratadistas. Larson condena con lenguaje fuerte esta decisión por acoger un criterio minoritario e ir contra la tendencia predominante en la jurisprudencia. Se pregunta: "¿Cómo hemos de entender este bocado de xenofobia?" Larson, *Workmen's Compensation*, Vol. 2A, Sec. 72.31 pág. 14–51, Ed. 1976. En sana función de raciocinio, nadie sigue precedentes equivocados.

del Seguro del Estado en la obligación legal común de asegurar sus obreros y empleados a tenor de lo dispuesto en la Ley de Compensaciones por Accidentes del Trabajo. Bajo ninguna premisa puede considerarse tercero o extraño causante de daño al patrono a quien la Ley expresamente dispensa de la obligación de asegurar y quien es parte regulada por el esquema de seguro exclusivo compulsorio.

"No hay responsabilidad del contratista principal si el subcontratista ha asegurado la compensación de sus empleados, toda vez que el propósito de la ley es impedir que se encargue de trabajos a subcontratistas irresponsables, privando a los obreros lesionados de los beneficios de la ley. El propósito del estatuto se ha cumplido si el subcontratista asegura. Imponer al principal responsabilidad por la compensación, aun cuando el subcontratista está asegurado, resultaría en conceder a los empleados del subcontratista más derecho que los empleados del principal, porque tendrían derecho a reclamar de su patrono inmediato el subcontratista al igual que del principal, situación que no armoniza con la intención legislativa." Schneider, *Workmen's Compensation*, Vol. 2, Sec. 326, pág. 177, Ed. 1942.

La Ley no presenta las complicaciones originadas por este recurso. Todo lo que se propone el estatuto es que el obrero esté protegido por *un* seguro cuya prima la pagará el patrono estatutario o el contratista según sea el caso. Pero la Ley no exige *dos* seguros en vez de uno. Tampoco puede haber *dos* responsables bajo el diseño legislado, si uno es dispensado del seguro. *Revocada.*

El Juez Asociado Señor Dávila emitió opinión disidente a la cual se unen los Jueces Asociados Señores Irizarry Yunqué y Negrón García.

—O—

Opinión disidente del Juez Asociado Señor Dávila con la cual concurren los Jueces Asociados Señores Irizarry Yunqué y Negrón García.

San Juan, Puerto Rico, a 31 de marzo de 1977

La Autoridad de las Fuentes Fluviales contrató con Zachry International la construcción de unas plantas termo-eléctricas. Luego de entrega y aceptada la obra, Zachry continuó a cargo de ciertos trabajos de mantenimiento. En ocasión en que debía llevar a cabo una reparación en una válvula de la tubería de vapor, avisó desde el día anterior a la Autoridad para que tomaran las medidas necesarias para que no hubiera vapor en la línea. Al llegar a la planta, el encargado de hacer el trabajo preguntó al ingeniero a cargo de la línea si estaba libre de vapor. El ingeniero, empleado de la Autoridad, le confirmó que lo estaba. Comenzó a desmontar una válvula y salió un golpe de vapor que lo tiró al piso y le causó graves quemaduras.

El empleado de Zachry, Héctor Lugo, fue compensado por el Fondo del Seguro del Estado, con cargo a la póliza de Zachry. Posteriormente Lugo demandó a la Autoridad de las Fuentes Fluviales,[1] alegando que era un tercero causante del daño y que de acuerdo con lo que dispone el Art. 31 de la Ley de Compensaciones por Accidentes del Trabajo debía compensarle los daños sufridos.[2] Alegó que la Autoridad fue negligente al mantener la línea con vapor y que él fue

---

[1] El Administrador del Fondo no se subrogó en los derechos del obrero según establece el Art. 31 y éste radicó la demanda contra la Autoridad de las Fuentes Fluviales.

[2] Dispone el Art. 31, en su parte pertinente:

"En los casos en que la lesión, enfermedad profesional o la muerte que dan derecho de compensación al obrero, empleado o sus beneficiarios, de acuerdo con este Capítulo, le hubiere provenido bajo circunstancias que hicieren responsables a tercero de tal lesión, enfermedad o muerte, el obrero o empleado lesionado o sus beneficiarios podrán reclamar y obtener daños y perjuicios del tercero responsable de dicha lesión, enfermedad o muerte dentro del año subsiguiente a la fecha en que fuere firme la resolución del caso por el Administrator del Fondo del Seguro del Estado, y éste podrá subrogarse en los derechos del obrero, empleado o sus beneficiarios para entablar la misma acción. . . ."

prudente al cerciorarse con el ingeniero a cargo de la planta de que en verdad la línea estaba lista para ser reparada.

La demanda fue declarada con lugar. La Autoridad solicitó la revisión a la que accedimos por estar planteada una cuestión fundamental en la interpretación del Art. 31 antes citado, en relación con lo que constituye un tercero causante del daño.

El Art. 19 de la Ley establece que "[t]odo patrono asegurado al dar cuenta con sus nóminas anuales, deberá incluir en tales nóminas los salarios pagados a todos los obreros y empleados que estuvieren trabajando o fuere a emplear bien por ajuste, o ya bajo una persona con quien ajustó el patrono o bajo un contratista o subcontratista independiente empleado o contratado por dicho patrono, y toda cuenta, o impuesto cobrado por el Estado se basará sobre la nómina corriente del patrono, en las cuales deberán estar incluidos los trabajadores antes mencionados; Disponiéndose, que esta disposición no será aplicable a los patronos para quienes se hiciere trabajo por un contratista independiente que estuviere asegurado como patrono de acuerdo con las disposiciones de esta ley."

Una lectura de dicho artículo demuestra que es condicional la obligación del patrono estatutario de incluir en su nómina al obrero del patrono contractual. El mencionado artículo "se aplica solamente en los casos en que el contratista independiente no estuviere asegurado." *Montaner Adm.* v. *Comisión Industrial,* 59 D.P.R. 285–290 (1941). De manera pues, que si el patrono contractual está asegurado el patrono estatutario no tiene que incluir a los obreros del primero en su declaración de nómina, no surgiendo por tanto en esta situación la relación de patrono y empleado entre el patrono estatutario y el empleado del patrono contractual. Como consecuencia de lo expuesto, si el patrono contractual no está asegurado y el patrono estatutario cumple con las disposiciones

del Art. 19 le cobija la inmunidad establecida en el Art. 20. (³)

Sostiene la recurrente que "[l]a relación de contratista independiente entre Zachry y la Autoridad le concedía el derecho a el [*sic*] demandante a recibir compensación bajo la póliza ocupacional de la Autoridad como póliza subsidiaria, en la eventualidad de que por cualquier razón la póliza de Zachry no fuera suficiente, careciera de cubierta, o Zachry careciera de póliza como tal. Este derecho que se le concede a el [*sic*] empleado del patrono contractual o real, le concede a la vez a el [*sic*] contratista independiente[⁴] (la Autoridad) gozar de la inmunidad del remedio exclusivo como patrono asegurado."

Invoca la recurrente a Larson en su *Workmen's Compensation Law*, Vol. 2A, Sec. 72.31 sosteniendo que debe reconocérsele la inmunidad al patrono estatutario ya que si no se le concede no tendría incentivo alguno para exigirle al patrono con quien ha subcontratado que obtenga una póliza del Fondo del Seguro del Estado.

La Ley de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. sec. 1 *et seq.*, surgió como una medida de protección social para garantizarle compensación al obrero que sufre un accidente en el curso de su empleo independientemente del hecho de si medió o no negligencia por su parte o por la del patrono. Es una medida social impuesta por la Asamblea

---

(³) Dispone el Art. 20:

"Cuando el patrono asegure sus obreros y empleados de acuerdo con el presente Capítulo, el derecho aquí establecido para obtener compensación será el único remedio en contra del patrono, aun en aquellos casos en que se haya otorgado el máximo de las compensaciones o beneficios de acuerdo con el mismo; pero en el caso de accidente, enfermedades o muerte de los obreros o empleados no sujetos a compensación de acuerdo con este Capítulo, la responsabilidad del patrono es y continuará siendo la misma que si no existiere el presente Capítulo."

(⁴) Es incorrecto llamar a la Autoridad contratista independiente. Lo correcto es patrono estatutario. Ver *Colón Santiago* v. *Comisión Industrial*, 97 D.P.R. 208–210 (1969), donde denominamos al contratista como patrono "estatutario" y al subcontratista patrono "contractual o real".

Legislativa. El empleado renuncia a su derecho a recobrar del patrono mediante la acción ordinaria a cambio de que será compensado por todo accidente que sufre en el curso de su empleo. El patrono paga la prima del seguro establecido para llevar a cabo los propósitos de la ley a cambio de su inmunidad. *López Rodríguez* v. *Delama,* 102 D.P.R. 254-258 (1974); *Cortijo Walker* v. *Fuentes Fluviales,* 91 D.P.R. 574 (1964).

Las disposiciones de la ley y la interpretación que le hemos dado a las mismas restringen la responsabilidad del patrono estatutario que contrata con otro que no está asegurado *vis a vis* los derechos del obrero. Así en *Colón Santiago* v. *Comisión Industrial,* 97 D.P.R. 208 (1969), resolvimos "que un patrono 'estatutario' en virtud del Art. 19 de la Ley de Compensaciones por Accidentes del Trabajo solo responde de la compensación ordinaria que corresponde al empleado u obrero de un subcontratista no asegurado. Cuando concurre la circunstancia de que el obrero es un menor empleado en contravención a la ley, el resarcimiento de la compensación adicional recae sobre el patrono contractual."

Hemos visto que la obligación del patrono estatutario de incluir en su nómina los obreros del patrono contractual que le realiza un trabajo es condicional a que el segundo no esté asegurado y que en los casos en que el patrono estatutario ha asumido el costo del seguro su responsabilidad es limitada. Siendo ello así no vemos razón alguna para extender la inmunidad concedida por la ley al patrono estatutario cuando por razón de su negligencia un empleado de un patrono contractual sufre daños. No podemos olvidarnos de que los terceros que ofrecen mayor peligro a la seguridad de los obreros son los empleados de los patronos estatutarios que trabajan en el mismo proyecto. El obvio propósito de la disposición que permite las demandas contra terceros causantes del daño es que la pérdida la sufra el causante del daño y no la tenga que soportar el obrero lesionado o el Fondo del Seguro del Estado.

*Colón Núñez* v. *Horn-Linie,* 423 F.2d 952 (1st Cir. 1970; (⁵)
*Fonseca* v. *Pacific Constr. Co. Ltd.,* 513 P.2d 156 (Hawaii
1973) ; *Workmen's Compensation Law,* 32 U. Pitt. L. Rev.
259 (1971). En el presente caso se le avisó a la demandada
con anticipación para que tuviera las líneas libre de vapor y
antes de comenzar el trabajo se inquirió del supervisor de
mantenimiento si las líneas estaban libres y al contestar en
la afirmativa se dio comienzo al trabajo con las trágicas con-
secuencias que dieron base a este litigio. ¿Acaso la deman-
dada adoptó esa actitud por considerar que le cubría la cláu-
sula de inmunidad y que no respondería en daños y perjui-
cios? Hay que tener presente que los accidentes en aquellos
casos en que el patrono contractual está asegurado no se con-
sideran para la experiencia de la póliza del patrono estatuta-
rio, Art. 30, 11 L.P.R.A. 31, y que de reconecerle inmunidad
a estos patronos, el Fondo no podía recobrar lo gastado en el
obrero lesionado. Además ya en *López Rodríguez* v. *Delama,*
supra, expresamos que "[e]n ausencia de expresión legisla-
tiva sobre el significado del vocablo 'terceras personas' usado
en el artículo 31 de la Ley debemos conferirle su significado
usual asumiendo que incluye a toda persona aparte del em-
pleado lesionado y su patrono asegurado."

Claramente se sirve mejor a la seguridad de los trabaja-
dores, que es el propósito cardinal de la ley, responsabilizando
en daños al patrono estatutario que por su negligencia oca-
siona daños a un obrero de un patrono contractual, que ex-
tendiéndole el palio protector de la inmunidad como incentivo

---

(⁵) El Tribunal de Apelaciones para el Primer Circuito en un caso
originado en el Distrito de Puerto Rico había resuelto en *Musick* v. *Puerto
Rico Telephone Company,* 357 F.2d 603 (1966), que la inmunidad concedida
por la Ley de Compensaciones por Accidentes del Trabajo a los patronos
asegurados se extendía a los patronos estatutarios. Posteriormente dicho
Tribunal revocó a *Musick* en *Colón Núñez* v. *Horn-Linie,* 423 F.2d 952
(1970), entre otras razones, porque interpretó que una sentencia de este
Tribunal en el caso de *González* v. *Cervecería Corona, Inc.,* R-67-272 re-
suelto el 29 de enero de 1969 implicaba que este Tribunal no estaba de
acuerdo con el dictamen de *Musick.*

para lograr que los patronos contractuales aseguren sus obre-ros. Para el obrero y para el Fondo representa lo mismo el que la prima la satisfaga cualquiera de los dos patronos. Bajo las dos alternativas los obreros están asegurados.

No puedo estar de acuerdo con la doctrina sentada en el presente caso. Confirmaría la sentencia recurrida que declaró con lugar la demanda.