Lydia Orza Rentas Vda. de Costas, demandante y recurrente, *v.* Puerto Rico Olefins et als., demandadas y recurridas, Catalytic Industrial Maintenance Co., Inc., tercera demandada; José Alberto Costas Cortés y Miguel Angel Costas Cortés, demandantes y recurrentes, *v.* Puerto Rico Olefins, P.P.G. Industries y Otros, demandados y recurridos, Catalytic Industrial Maintenance Co., Inc., tercera demandada.

*Número:* R-78-104 *Resuelto:* 20 de octubre de 1978

*Mora & Cangiano,* abogados de José Alberto y Miguel A. Costas Cortés, recurrentes; *Godofredo Torres Costas,* abogado de la recurrente Lydia Orza Rentas Vda. de Costas; *Vivas & Martínez Texidor,* abogados de las recurridas.

PER CURIAM: Puerto Rico Olefins Co. contrató el mantenimiento de su planta con Catalytic Industrial Maintenance Co., Inc. Ambas compañías tenían a sus respectivos obreros asegurados con el Fondo del Seguro del Estado. Tres empleados de Catalytic murieron al realizar labores de mantenimiento en Olefins. Los familiares de los obreros fenecidos, después de recibir compensación del Fondo del Seguro del Estado, presentaron demanda contra Puerto Rico Olefins Co., y contra sus propietarios, reclamando daños basados en negligencia.

A instancia de los demandados, el Tribunal Superior dictó sentencia sumaria declarando sin lugar la demanda por entender que el caso *Lugo Sánchez* v. *A.F.F.*, 105 D.P.R. 861 (1977), es idéntico al de autos y excluye dicha acción. *Lugo Sánchez* interpreta el Art. 19 de la Ley de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. sec. 20, en el sentido de que impide una acción de daños por obreros del patrono asegurado contra el "patrono estatutario".

Los demandantes-recurrentes entienden que la sentencia sumaria fue improcedente porque hay controversia sobre los siguientes hechos: (1) si los demandados son o no patronos estatutarios y (2) si estos renunciaron contractualmente a la inmunidad que tienen como tales patronos estatutarios. Sostienen, además, que el caso *Lugo Sánchez*, supra, es distinguible porque en el presente caso los demandados (Olefins y sus dueños) se obligaron contractualmente a ofrecer condiciones de trabajo "seguras" a los obreros de Catalytic. Sobre estos nos expresamos más adelante.

■ Aunque la determinación de si el demandado es o no patrono estatutario puede plantear cuestiones de hecho o cuestiones de derecho o ambas, en el presente caso no se da, contrario a como sostienen los demandantes, cuestión de hecho alguna que afecte esa determinación.

La determinación de si un demandado es o no patrono estatutario depende de las relaciones contractuales entre dicho demandado y el patrono real de los obreros. Los demandados probaron esas relaciones contractuales mediante copia del contrato suscrito entre ellos y Catalytic, presentado en apoyo de la solicitud de sentencia sumaria. Los demandantes no impugnaron el contenido de ese documento. No existe controversia alguna de hechos relacionada con el *status* de patrono estatutario de los demandados.

■ Aunque los demandantes no lo plantean, tampoco existe controversia alguna de derecho sobre el *status* de patrono estatutario de los demandados. Dicho término ha venido a significar dueños de obras y principales a quienes la ley impone la obligación de asegurar a los empleados de los contratistas o subcontratistas que aquéllos contraten para la ejecución de obras y servicios, cuando éstos no los tengan asegurados. El propósito de esa obligación es que dichos empleados estén asegurados, no importando que el seguro lo pague el contratista o subcontratista, o en la alternativa, el dueño de la obra o el principal. El pago de ese seguro por el contratista, el subcontratista, el principal, o el dueño de la obra, inmuniza a todos los patronos contra acciones de daños por los empleados o por el Fondo. *Lugo Sánchez* v. *A.F.F.*, supra y *Colón Santiago* v. *Comisión Industrial*, 97 D.P.R. 208 (1969).

Los demandados en este caso son patronos estatutarios ya que los empleados de Catalytic son o eran empleados que trabajaban "bajo un contratista o subcontratista independiente empleado o contratado por dicho patrono." 11 L.P.R.A. sec. 20. Además, al igual que en el caso *Lugo Sánchez*, supra, son o eran empleados de un contratista independiente que prestaba servicios de mantenimiento en la planta del patrono estatutario. Su patrono real, Catalytic, estaba asegurado.

■ La alegación de si los demandados renunciaron o no contractualmente a la inmunidad patronal no envuelve real-

mente una controversia sobre hechos esenciales que ameriten la revocación de la sentencia impugnada porque, estando el contrato sometido y aceptado en evidencia, es del propio contrato que puede derivarse esa determinación. Los demandantes sostienen que dicha renuncia surge del inciso (d) del Art. VIII del contrato. Nada encontramos en dicho inciso que exprese o implique tal renuncia de inmunidad patronal. Dicho inciso se limita a establecer que cuando Catalytic vaya a realizar trabajos en alguna unidad de Olefins las demandadas harán que la unidad se cierre y que quede libre de gas cuando sea necesario y que Catalytic, al trabajar en dicha unidad, comprobará que existen condiciones seguras en relación con el trabajo a realizarse en la misma.

El caso *Vélez* v. *Halco Sales, Inc.*, 97 D.P.R. 438 (1969), en que apoyan los demandantes su contención de renuncia de inmunidad es distinto. La controversia allí no giraba en torno a la renuncia de inmunidad del patrono estatutario a favor de los obreros de un contratista, sino a la renuncia de inmunidad del patrono verdadero a favor del arrendador del equipo que los empleados de ese patrono usaban en su trabajo. El patrono y el arrendador habían pactado en el contrato que el arrendatario (el patrono) se hacía responsable de toda reclamación que surgiere del uso del equipo y que liberaba al arrendador de esas reclamaciones. Un obrero lesionado presentó acción contra el arrendador, quien no era su patrono verdadero, ni su patrono estatutario, reclamando daños alegadamente causados por defectos del equipo. La cuestión a resolver era si el arrendador podía traer como tercero demandado al patrono del obrero. Se sostuvo que podía traerlo porque el patrono había renunciado contractualmente a su inmunidad patronal.

En el contrato del caso de autos, por el contrario, hay una cláusula mediante la cual el patrono verdadero se obliga

a indemnizar y a liberar al patrono estatutario de toda reclamación que surja de la ejecución del contrato, excepto en la medida en que haya negligencia del patrono estatutario o de sus empleados propios. El alcance de esa excepción es liberar de responsabilidad al patrono verdadero de la negligencia en que pueda incurrir el patrono estatutario. La cláusula discutida no tiene el efecto ni el alcance de una renuncia de inmunidad patronal por parte de ninguno de los patronos.

El último planteamiento de los demandantes es al efecto de que el caso *Lugo Sánchez* es distinguible del presente porque allí la acción fue *ex delicto* y aquí la acción es *ex contractu*, debido a que los demandados se obligaron contractualmente a mantener condiciones seguras de trabajo y libre de gases, e incumplieron esa obligación.

En primer lugar, no fueron los demandados, sino Catalytic quien contractualmente se obligó a verificar que existiesen condiciones seguras de trabajo. La obligación contractual de los demandados se limitó a cerrar las unidades a ser trabajadas por Catalytic y, cuando fuese necesario, a liberarlas de gases.

El propósito evidente de esas obligaciones recíprocas fue establecer los actos que cada una de las partes venía obligada a realizar al darse mantenimiento a la planta. Parece también evidente, que si una de las partes incumple sus obligaciones, la otra puede exigirle daños. Así, por ejemplo, si Catalytic no verifica que puede trabajar con seguridad y, como consecuencia, causa daños a la planta, debe compensarlos.

La teoría de los demandantes es que mediante esas obligaciones los demandados se obligaron también a compensar los daños que sufrieran los empleados de Catalytic. Vimos, al discutir el segundo señalamiento, que esas obligaciones no envolvían una renuncia de inmunidad patronal. La teoría de que

los demandados se obligaron a compensar a los obreros, equivale igualmente a sostener que renunciaron a su inmunidad patronal.

Es inverosímil que los demandados hayan exigido contractualmente a Catalytic que asegurara a sus obreros y que simultáneamente hayan contractualmente renunciado a la inmunidad patronal que ese seguro les otorga. Toda vez que Catalytic se obligó a comprobar que existiesen condiciones seguras de trabajo es igualmente inverosímil que ésta, recíprocamente con los demandados, haya pactado la renuncia de su inmunidad patronal. Encontrar esas renuncias en el contrato sólo puede hacerse violentando sus expresiones.

Cabe observar que si bien fue Catalytic y no los demandados quien se obligó contractualmente a comprobar que existiesen condiciones seguras de trabajo, tanto una como los otros tienen obligación legal en ese sentido bajo la Ley de Seguridad y Salud en el Trabajo, 29 L.P.R.A. secs. 361–361bb. Véase Sec. 361e.

 El incumplimiento de esa obligación legal no autoriza causa de acción alguna a favor de los obreros, aun cuando sufran lesiones y tampoco afecta la inmunidad que el patrono tiene bajo el Art. 20 de la Ley de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. sec. 21. Si se resolviera que un patrono que contractualmente se obliga a mantener condiciones seguras de trabajo viene obligado a resarcir a obreros lesionados, igual remedio existiría cuando la obligación surge por mandato de ley. El efecto de ello sería anular por completo la inmunidad patronal que concede el citado Art. 20 de la ley.

*No habiéndose cometido los errores señalados, debemos confirmar la sentencia sumaria dictada en este caso y desestimar la demanda.*

Los Jueces Asociados Señores Dávila, Irizarry Yunqué y Negrón García disienten conforme al criterio expresado en la opinión disidente emitida en *Lugo Sánchez* v. *A.F.F.*, 105 D.P.R. 861, 867 (1977).