# 98 DTA 222

## TRIBUNAL DE CIRCUITO DE APELACIONES
## CIRCUITO REGIONAL VI, CAGUAS, HUMACAO Y GUAYAMA

ZULIMAR ORTEGA PEREZ, ET AL.
Demandantes-Apelantes

v.

R.J. REYNOLDS TOBACCO, CORP. ESQUILINO TORO, ET AL.
Demandados-Apelados

Núm. KLAN-96-00669

San Juan, Puerto Rico, a 19 de agosto de 1998

Panel integrado por su Presidente, Juez Rossy García
y los Jueces González Román y Ortiz Carrión

Ortiz Carrión, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

El Señor Esquilino Toro solicita la revisión de una sentencia sumaria parcial en la que el Tribunal de Primera Instancia, Sala Superior de Humacao, se negó a desestimar una demanda de daños y perjuicios incoada en su contra. En su recurso, el señor Esquilino Toro plantea que el tribunal *a quo* erró al concluir que él no tiene derecho a invocar la inmunidad que la Ley de Compensaciones por Accidentes del Trabajo, Núm. 45 de 18 de abril de 1935, según enmendada, 11 L.P.R.A. sec. 1 y ss[1] le confiere a los patronos y supervisores cuyos actos negligentes, en el curso del empleo, le causen daños a los empleados de los contratistas de los cuales se sirva para la ejecución de obras y servicios.

A su vez, los demandantes apelan de la misma sentencia sumaria por habérsele desestimado su demanda de daños y perjuicios contra la co-demandada R.J. Reynolds Tobacco, Corp. En su apelación los demandantes señalan que el tribunal apelado incurrió en los siguientes errores:

*"...al concluir que, bajo el esquema de compensación a obreros por accidentes del trabajo, la*

*inmunidad patronal también cobija a un patrono estatutario como el apelado R.J. Reynolds Tobacco Corp. cuando --como en el caso de autos-- los hechos no controvertidos establecieron que el daño cuya indemnización se reclama fue ocasionado por un acto intencional o de crasa negligencia del patrono estatutario.*

*...al desestimar la demanda en cuanto al apelado R.J. Reynolds Tobacco Corp., a pesar de que los documentos que se acompañaron a la oposición a la sentencia sumaria y a la propia moción, probaron el hecho de que las lesiones por las cuales se reclama en el caso del epígrafe fueron causadas por la negligencia crasa del apelado Aquilino [sic] Toro. El estado de derecho vigente en Puerto Rico consagra la responsabilidad vicaria de los dueños de empresa respecto de los perjuicios causados por sus empleados. Por tanto, habiéndose probado por los documentos que los daños que fueron causados por un empleado de R.J. Reynolds Tobacco Corp, [sic] esta última y su compañía aseguradora, vienen obligados a responder por lo mismos."*

Después de examinar las cuestiones planteadas en ambos recursos, por tratarse del mismo pleito, este Tribunal considera conveniente consolidar ambos recursos. Por otra parte, antes de adjudicar los recursos procede hacer una breve relación del contexto procesal en que se suscitan las cuestiones planteadas.

# I

Este pleito trata sobre una demanda enmendada presentada por Zulimar Ortega Pérez y sus hermanos menores de edad, representados por su padres, el señor Efraín Ortega Figueroa y la señora Sarimar Pérez Parrilla, quien compareció además por sí, contra R.J. Reynolds Tobacco Corp., y el señor Esquilino Toro. ■ En la demanda enmendada se hacen las siguientes alegaciones para sostener la reclamación de compensación por los daños y perjuicios sufridos como consecuencia de unas lesiones sufridas por el señor Efraín Ortega Figueroa:

*"(1) Efraín Ortega Figueroa y Sarimar Pérez Parrilla constituyeron desde hace más de diez años un pacto para vivir como marido y mujer entre sí y establecer una comunidad de bienes, obligándose a aportar sus bienes, esfuerzo y trabajo para beneficio común. Durante su unión consensual han procreado tres hijos menores de edad, nombrados Zulimar, Efraín y Christian de 9, 7 y 6 años de edad respectivamente. Los referidos menores demandantes residen con sus padres en la ciudad de Canovanas, Puerto Rico y están bajo la patria potestad y custodia de éstos.*

*(2) El 17 de noviembre de 1992 Efraín Ortega Figueroa, integrante de la comunidad de bienes constituida con su compañera consensual Sarimar Pérez Parrilla, visitó los terrenos donde ubican los almacenes de la demandada R.J. Reynolds Tobacco Corp. en Yabucoa, Puerto Rico.*

*(3) Una vez dentro de los terrenos de la demandada R.J. Reynolds Tobacco Corp. en Yabucoa, un supervisor de dicha empresa, nombrado Esquilino Toro, y quien lo conocía, actuando en el curso de sus funciones como tal supervisor de la demandada, solicitó de Efraín Ortega Figueroa que le hiciera el favor de mover manualmente --porque no estaba funcionando adecuadamente-- uno de los ganchos de acero que se utilizan para asegurar los furgones de "trailers" a una rampa, ubicada junto a una pared en los terrenos de la empresa demandada.*

*(4) En el preciso momento en que Efraín Ortega Figueroa cumplía con la petición de Esquilino Toro, y movía hacia abajo el gancho de acero para quitarle el seguro, de suerte que un "trailer" enyuntado a un furgón allí estacionado pudiera zafarse del mecanismo de la rampa, el propio Esquilino Toro le ordenó al conductor de ese "trailer" con furgón --haciendole un gesto con la mano-- que le diera marcha al vehículo hacia atrás, sin tomar en cuenta que Efraín Ortega Figueroa todavía tenía su mano izquierda colocada entre el furgón en movimiento y la pared de la rampa. Como resultado, cuando el camión "trailer" dio marcha hacia atrás, según las instrucciones del supervisor Esquilino Toro, pilló violentamente de Ortega Figueroa contra la pared de la referida rampa.*

*(5) Como resultado del accidente descrito, Efraín Ortega Figueroa resultó con su mano izquierda completamente destrozada. A partir de esa fecha ha sido sometido a seis intervenciones quirúrgicas, ha perdido la totalidad de las funciones de su mano izquierda, ha sufrido la casi total paralización de sus funciones renales y otras complicaciones en sus funciones fisiológicas. Por ende, ha quedado*

*incapacitado permanentemente para trabajar.*

*(6) La demandante Sarimar Pérez Parrilla, compañera consensual de Efraín Ortega Figueroa, dependía económicamente de los ingresos que este último recibía en el trabajo que se describe en el párrafo subsiguiente. Así mismo [sic], los demandantes Zulimar, Efraín y Christian Ortega Pérez, por ser menores de edad también [sic] dependían totalmente de los ingresos que, en su trabajo, producía su padre con patria potestad Efraín Ortega Figueroa.*

*(7) A la fecha en que ocurrió el accidente descrito Efraín Ortega Figueroa estaba empleado como conductor de "trailers" con la empresa Fast Transportation Services, Inc.. Recibía ingresos por su trabajo, los cuales, en promedio, ascendían a $450.00 semanales. Dejó de devengar toda clase de ingresos con su patrono desde el 17 de noviembre de 1992 hasta el 3 de mayo de 1993. A pesar de que, a partir de ésta [sic] última fecha Ortega devengó ingresos esporádicamente en las labores que --hasta su última operación-- pudo realizar en la empresa para la cual trabajaba, la demandante Sarimar Pérez [sic] Parrilla y sus menores hijos Zulimar, Efraín y Christian Ortega Pérez han sufrido en el tiempo ya transcurrido una pérdida económica en exceso de $10,000.00 y perderán una suma no menor de UN MILLON CUARENTA Y TRES MIL DOLARES ($1,043,000.00) correspondiente a la pérdida de los ingresos que les hubiera provisto Efraín Ortega Figueroa durante su vida útil, de no haber ocurrido el accidente.*

*(8) La demandante Sarimar Pérez Parrilla experimentó y está experimentando intensos sufrimientos y angustias mentales como resultado del accidente precedentemente descrito. Dicho accidente tuvo el efecto de trastocar su vida familiar, obligó a la demandante a prodigar cuidados especiales y atenciones a su compañero consensual y afectó seriamente la calidad de la vida de ésta. La demandante estima en $100,000.00 los daños que ha sufrido por este concepto.*

*(9) Por su parte, cada uno de los menores demandantes Zulimar, Efraín y Christian Ortega Pérez experimentó y esta experimentando intensas angustias y sufrimientos mentales al observar las condiciones en que ha quedado su padre como resultado del accidente descrito. Cada uno de los menores demandantes estima en $50,000.00 los daños que respectivamente ha sufrido por este concepto.*

*(10) La causa eficiente de todos los daños y perjuicios sufridos, tanto por concepto de pérdidas económicas como por sufrimientos y angustias mentales de cada uno de los demandantes, lo fue la negligencia del co-demandado Esquilino Toro --en ocasión de sus funciones como empleado de la co-demandada R.J. Reynolds Tobacco Corp.--, al indicar al conductor de un "trailer" que se encontraba enyuntado a la rampa ubicada en los terrenos de la demandada que diera marcha hacia atrás al vehículo pesado que conducía, sin tomar en cuenta que --en ese preciso momento-- Efraín Ortega Figueroa estaba colocado entre el vehículo y la pared y tenía su mano izquierda apoyada sobre la parte posterior del "trailer".*

*(11) A tenor con lo dispuesto en el artículo 1803 del Código Civil de Puerto Rico la co-demandada R.J. Reynolds Tobacco Corp. viene obligada a responder solidariamente por los daños y perjuicios descritos precedentemente los cuales, por su negligencia, ocasionara a terceras personas su empleado Esquilino Toro mientras se encontrara en el desempeño de sus funciones.*

*(12) La demandada Compañía de Seguros X, a quien se demanda bajo este nombre ficticio por no conocerse su nombre correcto, había expedido y mantenía vigente a la fecha en que ocurrió el descrito accidente, una póliza de seguros cubriendo la responsabilidad en que, por los hechos descritos, incurriera la co-demandada R.J. Reynolds Tobacco, Corp. frente a terceras personas.*

*(13) Por su parte, la demandada Compañía de Seguros XX, a quien se demanda bajo este nombre ficticio por desconocerse su nombre correcto, había expedido y mantenía vigente a la fecha en que ocurrió el descrito accidente, una póliza de seguros cubriendo la responsabilidad en que, por los hechos descritos, incurriera el demandado Equilino [sic] Toro frente a terceras personas."*

Oportunamente, R. J. Reynolds Tobacco Corp. y el señor Toro contestaron la demanda enmendada. Posteriormente el Administrador de la Corporación del Fondo del Seguro del Estado compareció

mediante *"Solicitud de Intervención y Demanda de Subrogación"* en la cual alegó que el señor Efraín Ortega Figueroa reclamó los beneficios del Fondo, y esa corporación le proveyó tratamiento médico y compensación por las lesiones sufridas en el referido accidente, por lo que le reclama tales gastos a los demandados. R.J. Reynolds también contestó esta demanda de intervención y como defensa afirmativa alegó ser patrono estatutario del señor Efraín Ortega Figueroa, e invocó la inmunidad que en tales casos confiere la Ley del Sistema de Compensaciones por Accidentes del Trabajo.

Por su parte, el señor Efraín Ortega Figueroa presentó una demanda de intervención en la cual alega que aunque recibió los beneficios de la Ley del Sistema de Compensaciones por Accidentes del Trabajo, como el Administrador presentó una demanda de subrogación en la cual reclama los gastos incurridos en su tratamiento, el tenía un interés legítimo en reclamar los daños y perjuicios que no le fueron compensados por el Fondo.

Posteriormente, los demandados R. J. Reynolds Tobacco Corp. y el señor Toro presentaron una moción de sentencia sumaria en la cual solicitaron la desestimación de la demanda enmendada y las demandas de intervención presentadas por el Administrador de la Corporación del Fondo del Seguro del Estado y el señor Efraín Ortega Figueroa. En su moción alegan que para propósitos de la misma admiten como ciertos los hechos según expuestos en la demanda enmendada. Además alegaron que no existe controversia sobre los siguientes hechos materiales, sustentándolo con documentos:

*"(a) Que el interventor Efraín [sic] Ortega Figueroa, en relación a los mismos hechos objeto de la presente causa de acción, fue reportado al Fondo del Seguro del Estado determinándose que el accidente sufrido por él era uno de los protegidos por las disposiciones de la Ley de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A., Sec. 32.*

*(b) Que el Fondo del Seguro del Estado brindó tratamiento médico y compensación al interventor, Efraín [sic] Ortega Figueroa, en el caso FSE-93-15-03388-9.*

*(c) Que el patrono del Sr. Efraín [sic] Ortega Figueroa al momento de la ocurrencia del accidente lo era la Fast Transportation Service, Inc. (Véase decisión del Administrador del Fondo del Seguro del Estado notificando haber examinado por primera vez el 30 de noviembre de 1992 al lesionado y que continuaría bajo tratamiento médico en descanso, marcada como Exhibit #1).*

*(d) Que la demandada compareciente R.J. Reynolds Tobacco Co. contrató con Fast Transportation, Inc. el servicio de transportación terrestre efectivo el 1/1/91 hasta el 12/31/91 mediante orden de compra #91001037. (Se acompaña copia de dicha orden, páginas 1 y 2, marcada como Exhibit #2).*

*(e) Que con fecha del 26 de febrero de 1992 la Fast Transportation, Inc. sometió a la R.J. Reynolds Tobacco Co. carta de propuesta para renegociar el contrato de servicios de transportación terrestre para el año 1992-93 con alza de tarifas. (Véase carta de Celeste Hernández, Presidente de Fast Transportation Service, Inc. al Sr. Vicente Arroyo, gerente de asuntos corporativos de R.J. Reynolds Tobacco Co. con fecha del 26 de febrero de 1992, consta de dos folios, marcada como Exhibit # 3.*

*(f) Que R.J. Reynolds Tobacco Co. emitió cambio en orden de compra para extender contrato de servicio hasta el 1/31/92; segundo cambio de orden de compra para extender el contrato desde el 1/31/92 hasta 2/29/92 y tercer cambio de orden para extender el servicio desde el 3/1/92 hasta el 12/31/93. (Se acompaña copia de los tres cambios de orden al contrato original # 91001037 marcada como Exhibit # 4). Nótese que el accidente aludido en la demanda ocurre el 11/17/92.*

*(g) Que el principal contratante R.J. Reynolds Tobacco Co. al momento de la ocurrencia del accidente tenía asegurados a todos sus empleados mediante póliza del Fondo del Seguro del Estado y reportando una nómina de $15,015,980.66 que incluye y reporta nómina para choferes y carreteros por la cantidad ascendente a $2,894,199.91 (Se acompaña copia de declaración de nómina de R.J. Reynolds Tobacco Co. de fecha 20 de julio de 1992, obsérvese Código #7380 de Choferes y Carreteros que incluye a sobre 100 choferes y ayudantes, se marca como Exhibit #5)."*

Basándose en tales alegaciones ambos plantearon que R. J. Reynolds era patrono estatutario del señor Efraín Ortega, por lo que ambos invocaron la inmunidad que la Ley del Sistema de Compensaciones por Accidentes del Trabajo le confiere a los patronos estatutarios y sus supervisores por los daños causados al empleado de un contratista en el curso de su empleo y solicitaron la desestimación de la demanda incoada contra ellos.

Los demandantes se opusieron a esta moción de sentencia sumaria mediante escrito en el que se plantea que, en las circunstancias del caso de autos, ni R. J. Reynolds Tobacco Corp. ni el señor Toro tienen derecho a invocar la inmunidad patronal que establece la Ley del Sistema de Compensaciones por Accidentes del Trabajo, por lo que ambos responden por los daños y perjuicios sufridos por ellos.

R.J. Reynolds Tobacco Corp. y el señor Toro presentaron una réplica en la cual argumentaron que al momento del accidente objeto de la demanda el señor Toro era supervisor de tránsito con la función de proveer un lugar seguro de trabajo para los empleados y contratistas de su patrono, por lo cual tanto él como su patrono tienen derecho a invocar la inmunidad establecida por la Ley del Sistema de Compensaciones por Accidentes del Trabajo.

En respuesta a estas mociones y los documentos sometidos por las partes para sustentarlas, el tribunal *a quo* determinó que no existe controversia sobre los siguientes hechos:

*"1. Para el 17 de noviembre de 1992, fecha en que el Sr. Efraín Ortega Figueroa sufrió el accidente en controversia, trabajaba como conductor de equipo pesado para la Fast Transportation Services, Inc. [.]*

*2. Entre la co-demandada R.J. Reinolds [sic] Tobacco, Corp. y la Fast Transportation Services, Inc., existía al momento de los hechos, un contrato de transporte terrestre.*

*3. La co-demandada R.J. Reinolds [sic] Tobacco, Corp. patrono estatutario del obrero lesionado tenía contratado con la Fast Transportation, patrono real de éste, el servicio de transportación terrestre. El día de los hechos el Sr. Ortega acudió por instrucciones de su patrono la Fast Transportation a los almacenes de la demandada donde ocurrió el accidente en controversia.*

*4. La Fast Transportation Services era un patrono asegurado de conformidad con la Ley de Compensaciones por Accidentes en el Trabajo, razón por lo que el obrero lesionado acudió al Fondo del Seguro del Estado para solicitar los beneficios provistos en dicha ley.*

*5. El Administrador del Fondo determinó en el caso FSE-93-15-03388.9 que el Sr. Ortega sufrió un accidente en el trabajo y concedió a éste el tratamiento y la compensación correspondiente."*

En virtud de estas determinaciones de hecho, el tribunal recurrido concluyó que R.J. Reynolds Tobacco Corp. era un patrono estatutario con la inmunidad conferida por la Ley del Sistema de Compensaciones por Accidentes del Trabajo; pero que el señor Toro no tenía derecho a invocar la inmunidad que establece esa Ley, aduciendo que las alegaciones contra el señor Toro estaban *"fundamentadas en la falta al cumplimiento de los deberes impuestos en el Art. 1802 del Código Civil"*. En virtud de tales conclusiones, el tribunal *a quo* dictó sentencia sumaria parcial desestimando la demanda contra R.J. Reynolds Tobacco Corp., cumpliendo con lo dispuesto por la Regla 43.5 de las de Procedimiento Civil, y declaró no ha lugar la moción que presentó el señor Toro solicitando la desestimación de la demanda enmendada.

Ambas partes están inconformes con este dictamen por lo que recurrieron a este Tribunal mediante los recursos de *certiorari* y apelación que aquí se consolidan.

## II
A tenor con lo dispuesto en el artículo 2 de la Ley del Sistema de Compensaciones por Accidentes del Trabajo, según enmendada, 11 L.P.R.A. sec. 2, y su jurisprudencia interpretativa, todos los obreros o empleados que sufran lesiones, se inutilicen o pierdan la vida por accidentes relacionados con cualquier acto o función inherente a su trabajo o empleo, y que ocurran en el curso de éste y como consecuencia del mismo, o por enfermedades o muertes derivadas de la ocupación, según se

especifican en la Ley, están cubiertos por ella y tienen derecho a sus beneficios. *Segarra Hernández v. Royal Bank of P.R.,* **98 J.T.S. 37**; *Pacheco Pietri v. E.L.A.,* **93 J.T.S. 117**; *Santiago Hodge v. Parke Davis Co.,* 126 D.P.R. 1 (1990); *Odriozola v. S. Cosmetics Dist. Corp.* 116 D.P.R. 485 (1985). A su vez, el artículo 20 de la Ley, 11 L.P.R.A. sec. 21, establece que en las circunstancias de un accidente en el curso del empleo existe un remedio exclusivo a favor de los empleados de patronos asegurados, lo que equivale a la creación de una inmunidad a favor de los patronos asegurados contra cualquier otro tipo de reclamación que se le pueda incoar en tales casos. *Admor. F.S.E. v. Flores Hnos. Cement Prods.,* 107 D.P.R. 789, 792 (1978); *Ruiz Díaz v. Vargas Reyes,* 109 D.P.R. 761 (1980). Sobre esto, el artículo 19 de la Ley, 11 L.P.R.A. sec. 20, establece que los patronos no sólo tienen la obligación de asegurar a todos sus empleados directos sino también a los empleados de los contratistas o subcontratistas de los cuales se sirven para la ejecución de obras y servicios; disponiéndose que a los fines de la Ley, a los patronos se les considerará tan patronos de los empleados de sus contratistas como lo son los propios contratistas. De tal modo, el pago del seguro inmuniza tanto al patrono directo o real como al patrono principal o estatutario de cualquier reclamación de los empleados de uno o el otro por los daños sufridos como resultado de un accidente en el curso de su empleo. *Vda. de Costas v. P.R. Olefins,* 107 D.P.R. 782, 785 (1978); *Lugo Sánchez v. A.F.F.,* 105 D.P.R. 861 (1977); *Colón Santiago v. Comisión Industrial,* 97 D.P.R. 208 (1969); *Admor. F.S.E. v. Flores Hnos. Cement Prods. supra.*

Por otra parte, en *Cortijo Walker v. A.F.F.,* 91 D.P.R. 574 (1964), el Tribunal Supremo de Puerto Rico analizó el carácter absoluto de la inmunidad que el artículo 20 de la Ley de Compensaciones por Accidentes del Trabajo le confiere a los patronos directos o estatarios y señaló lo siguiente:

Este criterio legislativo de conceder inmunidad al patrono contra remedios fuera de la compensación se pronuncia aún más al adoptarse en 1935 el estatuto vigente. Bajo la legislación de 1928 --Ley Núm. 85-- que fue sustituida por la actual, existía igual disposición --Sec. 33-- declarando la compensación estatutaria el único remedio contra un patrono que aseguraba a sus obreros. No obstante esta disposición, la propia Ley Núm. 85 en su Sec. 44 concedía una acción de daños a favor del obrero o a sus herederos contra un patrono cuando las lesiones se debían al acto ilegal o negligencia criminal de su patrono, permitiéndole en tal caso al obrero o sus herederos renunciar a los beneficios del estatuto. De manera similar, la Sec. 45 permitía a la Comisión Industrial subrogarse en el derecho del obrero o sus herederos a obtener daños contra un patrono responsable de la lesión en el caso de acto ilegal o negligencia criminal del patrono. Esas disposiciones del estatuto anterior se descartaron desde el 1935 al adoptarse la ley actual, lo cual demuestra un señalado y definitivo criterio del Legislador de no conceder acción general de daños por concepto alguno contra el patrono cualquiera que fueren sus actuaciones en la esfera aquiliana y el grado de culpa o negligencia, con excepción de aquellas situaciones del Art. 15  --patrono no asegurado-- en que concediéndose al obrero o sus familiares los beneficios de la Ley, se les permite demandar al patrono en daños como una sanción adicional al incumplimiento de no asegurarse. Este es el único caso.

En *Admor. F.S.E. v. Flores Hnos. Cement Prods., supra,* y en *Santiago Hodge v. Parke Davis Co., supra,* pág. 8, el Tribunal Supremo reiteró este criterio y señala que un empleado lesionado *"carece de una causa de acción para demandar a su patrono ante los tribunales de justicia por los daños y perjuicios sufridos, irrespectivamente del grado de negligencia patronal que pueda haber mediado."*

El Tribunal Supremo ha reconocido excepciones a esta doctrina de inmunidad patronal, sin embargo, siempre ha reconocido la inmunidad patronal, irrespectivo del grado de negligencia incurrida por el patrono o sus supervisores. En *Odriozola v. S. Cosmetics Dist. Corp., supra,* se estableció que los daños causados a un empleado por actos discriminatorios de su patrono no son compensables bajo la Ley de Compensaciones por Accidentes del Trabajo, por lo que éstos pueden reclamarse ante los tribunales, ya que la Ley de Compensaciones por Accidentes del Trabajo no aplica a lesiones causadas intencionalmente por el patrono.

A su vez, en *Laureano Pérez v. Soto,* **96 J.T.S. 88**, se discute la *"doctrina de la doble capacidad"* o *"doble personalidad",* bajo la cual *"un patrono normalmente inmune a una reclamación por daños y perjuicios en virtud del principio de remedio exclusivo puede ser responsable hacia su empleado si ostenta, además de su capacidad como patrono, una segunda capacidad dimanante de una obligación independiente a la impuesta como patrono".*

Véase además, 2A Larson, *Workmen's Compensation Law*, Sec. 72.80, págs. 14-112 (1976), según citado en *F.S.E. v. E.L.A.*, 111 D.P.R. 402, 406 (1981). ■

A la luz de estos criterios, este Tribunal entiende que en las circunstancias del caso de autos, R. J. Reynolds Tobacco Corp., era un patrono estatutario cobijado por la inmunidad que concede la Ley del Sistema de Compensaciones por Accidentes del Trabajo. De los hechos incontrovertidos surge que al momento de sufrir su accidente el señor Ortega trabajaba para la Fast Transportation Services, Inc., y que esa corporación había cumplido con la obligación de asegurar a sus obreros, de conformidad con la Ley de Compensaciones por Accidentes del Trabajo. Surge además, que R.J. Reynolds Tobacco Corp. había contratado los servicios de transporte de la Fast Transportation Services, Inc., y que el señor Ortega acudió a los almacenes de R.J. Reynolds Tobacco Corp. para prestar un servicio, según instrucciones de su patrono. Asimismo surge, que el señor Ortega Figueroa acudió a la Corporación del Fondo del Seguro del Estado, la cual determinó que el señor Ortega Figueroa sufrió un accidente en el curso de su empleo, mientras estaba prestándole servicios a R.J. Reynolds Tobacco Corp., por lo que recibió tratamiento y compensación bajo la Ley del Sistema de Compensaciones por Accidentes del Trabajo.

Por otro lado, de los hechos alegados en la demanda enmendada, los cuales fueron dados por ciertos en la moción de sentencia sumaria, y de los hechos alegados en la moción de sentencia sumaria que no fueron contradichos por los demandantes no puede sustentar que en el caso de autos esté presente alguna de las excepciones a la doctrina de inmunidad patronal. Ciertamente, no surge acto intencional alguno por parte de R. J. Reynolds Tobacco Corp., ni puede concluirse que esta corporación tenga una *"doble personalidad"*, dimanante de alguna obligación independiente a la impuesta como patrono. Por consiguiente, actuó correctamente el foro recurrido al desestimar la reclamación contra R.J. Reynolds Tobacco Corp.

En lo que respecta a la reclamación contra el señor Esquilino Toro este Tribunal estima que el tribunal recurrido erró al no reconocerle la inmunidad que la Ley del Sistema de Compensaciones por Accidentes del Trabajo le confiere a los supervisores de los patronos asegurados.

Los hechos alegados en la demanda enmendada fueron dados por ciertos por R.J. Reynolds Tobacco Corp., y el señor Toro, a los fines de su solicitud de desestimación. ■ En la demanda enmendada se alega específicamente lo siguiente:

*"10. La causa eficiente de todos los daños y perjuicios sufridos, tanto por concepto de pérdida económica como por sufrimientos y angustias mentales de cada uno de los demandantes, lo fue la negligencia del co-demandado Esquilino Toro --en ocasión de sus funciones como empleado de la co-demandada R. J. Reynolds Tobacco Corp.--, al indicar al conductor de un "trailer" que se encontraba ajustado a la rampa ubicada en los terrenos de la demandada que diera marcha hacia atrás del vehículo pesado que conducía, sin tomar en cuenta que --en ese preciso momento-- Efraín Ortega Figueroa estaba colocado entre el vehículo y la pared y tenía su mano izquierda apoyada sobre la parte posterior del "trailer".*

*11. A tenor con lo dispuesto en el Art. 1803 del Código Civil de Puerto Rico la co-demandada R.J. Reynolds Tobacco Corp. viene obligada a responder solidariamente por los daños y perjuicios descritos precedentemente los cuales, por su negligencia, ocasionara a terceras personas su empleado Esquilino Toro mientras se encontraba en el desempeño de sus funciones."*

De tal forma, de la propia demanda surge que el demandado Esquilino Toro actuó en el desempeño de sus funciones, por lo que cualquier actuación que lo hiciere causante de la lesión sufrida por el señor Ortega Figueroa la hizo como empleado de R.J. Reynolds Tobacco Corp. y no como tercero a los fines de lo dispuesto por el anterior artículo 31, actual artículo 29 de la Ley del Sistema de Compensaciones por Accidentes del Trabajo.

En *Lopez Rodríguez v. Delama,* 102 D.P.R. 254 (1974), el Tribunal Supremo, interpretó que de acuerdo al entonces artículo 31 de la Ley de Compensaciones por Accidentes del Trabajo, renumerado ahora como artículo 29, 11 L.P.R.A. sec. 32, ■ en las circunstancias de ese caso un empleado lesionado podía demandar a un co-empleado por los daños que le causaron sus actos negligentes. Sin

embargo, en *Rivera Santana v. Superior Packaging, Inc. supra*, el Tribunal Supremo de Puerto Rico distingue esa interpretación del artículo 31 hecha en López Rodríguez, señalando que ésta se limita a aquellos casos en que los *"actos negligentes [del empleado] no estaban relacionados con sus funciones o deberes corporativos"* y *"se circunscribe a aquellos casos en que el deber de cuidado quebrantado por el co-empleado constituye un incumplimiento personal de una obligación proveniente del Art. 1802 del Código Civil"*. De tal modo, en Rivera Santana el Tribunal Supremo aclara que a un empleado --ya sea oficial, accionista o supervisor-- le cobija la inmunidad patronal cuando la alegada negligencia del co-empleado consiste en alegadamente violentar el derecho no-delegable de la corporación de proveer un lugar seguro de empleo. *Id.*, pág. 10168.

Por consiguiente, en el caso de autos, aun de probarse los hechos alegados en la demanda, los apelantes carecían de una reclamación válida contra el señor Toro, quien tiene derecho a la inmunidad que le confiere la Ley del Sistema de Compensaciones por Accidentes del Trabajo.

## III

Por los fundamentos antes expuestos, se confirma la sentencia desestimando la demanda contra R. J. Reynolds Tobacco Corp. y se expide el auto de *certiorari* solicitado por el señor Esquilino Toro, se revoca la sentencia parcial cuya revisión solicita, y se dicta sentencia desestimando la demanda incoada en su contra.

Lo acuerda y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

### ESCOLIOS 98 DTA 222

**1.** La Ley Núm. 83 de 29 de octubre de 1992, le cambió el nombre a la Ley Núm. 45 para denominarla Ley del Sistema de Compensaciones por Accidentes del Trabajo. En cumplimiento con la voluntad legislativa, se usará ese nombre para hacer alusión a la misma, a menos que se haga referencia a una interpretación de la Ley Núm. 45 antes de su cambio de nombre.

**2.** En la demanda también se incluyó como parte demandada a dos compañías aseguradoras de nombre desconocido.

**3.** En cuanto a esta doctrina en *Laureano Pérez v. Soto, supra*, pág. 1266, el Tribunal Supremo cita además las siguientes expresiones del comentarista Larson.

*"Perhaps the best way to approach a correct analysis of the dual persona concept is to provide illustrations of exceptional situations in which the concept can legitimately be employed. These will ordinarily be situations in which the law has clearly recognized duality of legal persons, so that it may be realistically assumed that a legislature would have intented that duality to be respected. The duality may be one firmly entrenched in common law or equity. The status of a trustee or of a guardian is a familiar example of this. No such case has appeared in the reports, but one can readily hypothesize the case of a trustee who, as trustee, is legal owner of a small business. If the question should arise whether this confers immunity on him as an individual for torts he commits upon employees of the trust business, no one would hesitate to answer in the negative".*

**4.** Véase pág. 2 de la Solicitud de Sentencia Sumaria, pág. 16 del Apéndice del recurso de *certiorari*.

**5.** El referido artículo 29 establece, en lo pertinente:

*"En los casos en que la lesión, enfermedad profesional o la muerte que dan derecho de compensación al obrero, empleado o sus beneficiarios, de acuerdo con este Capítulo, le hubiere provenido bajo circunstancias que hicieren responsables a tercero de tal lesión, enfermedad o muerte, el obrero o empleado lesionado o sus beneficiarios podrán reclamar y obtener daños y perjuicios del tercero responsable de dicha lesión, enfermedad o muerte dentro del año subsiguiente a la fecha en que fuere firme la resolución del caso por el Administrador del Fondo del Seguro del Estado, y éste podrá subrogarse en los derechos del obrero, empleado o sus beneficiarios para entablar la misma acción...".*