Carlos Whitmarsh Valdés, etc., demandantes y recurridos, *v.* Federico J. Maestre y Otros, demandados y peticionarios.

Número: O-82-212      Resuelto: 22 de octubre de 1982

*Luis F. Montijo,* de *Miranda Cárdenas, Francisco De Corral & Rodríguez,* abogado de los peticionarios; *Francisco Ariel Avilés Rodríguez,* abogado de la parte recurrida.

El Juez Asociado Señor Dávila emitió la opinión del Tribunal.

El demandante sufrió un accidente del trabajo el 8 de febrero de 1979. Lo atendió un médico privado. Éste, luego

de tratar al demandante, lo refirió al Fondo del Seguro del Estado el 7 de marzo de 1979.

En el Fondo fue tratado y le informaron, según se alega en la demanda, que ya era tarde y que había perdido la visión por el ojo derecho, debido a un tratamiento inadecuado. Se le indicó que le habían suministrado drogas y medicamentos inaplicables al tipo de lesión sufrida, lo que le ocasionó tal pérdida de visión y, a la postre, la enucleación del ojo. El Fondo del Seguro compensó como accidente del trabajo dictando su decisión final el 21 de noviembre de 1979.

El 20 de noviembre de 1980 radicaron demanda para resarcirse el obrero lesionado, la esposa y la sociedad de gananciales compuesta por el obrero y su esposa.

El codemandado doctor Maestre solicitó la desestimación de la demanda por estar prescrita la acción.

Es evidente que la acción incoada por la sociedad de gananciales está prescrita al igual que la de la esposa. Tuvieron conocimiento del daño desde el mes de marzo de 1979 y nada les impedía radicar la demanda correspondiente. *Alvarado Calaiño* v. *Romero*, 104 D.P.R. 127 (1975).

Ahora bien, la acción del empleado perjudicado contra el doctor Maestre presenta una situación distinta. Se alega que la actuación negligente del médico privado motivó la pérdida del ojo. ¿Procede considerar la intervención del médico privado como la de un tercero co-causante o como agravante del daño que da lugar a la aplicación del Art. 31 de la Ley de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. sec. 32? Si así se considerara, la acción del empleado no estaría prescrita, pues fue interpuesta dentro de los términos establecidos en esa disposición legal. El Fondo dictó la resolución final el 21 de noviembre de 1979 y la demanda fue radicada el 20 de noviembre de 1980. *El Día, Inc.* v. *Tribunal Superior*, 104 D.P.R. 149 (1975).

El Art. 31 dispone que "[e]n los casos en que la lesión, enfermedad [ocupacional] o la muerte que dan derecho de

compensación al obrero, empleado o sus beneficiarios, de acuerdo con esta ley le hubiere provenido bajo circunstancias que hicieren *responsables a tercero* de tal lesión, enfermedad o muerte, el obrero o empleado lesionado o sus beneficiarios podrán reclamar y obtener daños y perjuicios *del tercero responsable* de dicha lesión, enfermedad o muerte . . .". (Énfasis nuestro.)

■ Generalmente se acepta en jurisdicciones con estatutos parecidos o similares al nuestro que un médico que interviene con un obrero que ha sufrido un accidente compensable y su intervención negligente agrava el daño sufrido es el "tercero responsable" de que habla el Art. 31 contra quien puede instar acción el asegurador en los casos en que el estatuto, como el nuestro, concede la oportunidad de subrogarse en la causa de acción del obrero, y si el asegurador no la inicia el obrero lesionado puede entonces incoar su acción para resarcirse. *Baker* v. *Wycoff*, 79 P.2d 77 (1938); *Steeves* v. *Irwin*, 233 A.2d 126 (1967); *Hancock* v. *Halliday*, 150 P.2d 137 (1944); *D'Angona* v. *County of Los Angeles*, 613 P.2d 238 (1980); *German* v. *Chemray, Inc.*, 564 P.2d 636 (1977); *DeHaven* v. *Caulfield*, 314 F.2d 269 (1963); Nota: *Malpractice Actions and Workmen's Compensation*, 36 Va. L. Rev. 781 (1950); P. A. Leidy, *Malpractice Actions and Compensation Acts*, 29 Mich. L. Rev. 568 (1931); Anotación, *Right to Maintain Malpractice Suit Against Injured Employee's Attending Physician Notwithstanding Receipt of Workmen's Compensation Award*, 28 A.L.R.3d 1066 (1969).

■ En *Hancock* v. *Halliday*, supra, se estudia cuidadosamente la cuestión que ahora nos ocupa, citando distintas autoridades. Se hace referencia al hecho de que las leyes de compensaciones a obreros por accidentes del trabajo limitan la indemnización a concederse en aras de cubrir un área más extensa de responsabilidad, concediendo inmunidad al patrono, pero se expresa que sería altamente irrazonable que la inmunidad cubriera a una tercera persona

agravante del daño originalmente sufrido. En ésta se incluye específicamente a los médicos que intervienen con el obrero y que por su impericia o negligencia agravan la condición. Tampoco se señala razón alguna por la cual el médico no responda al Fondo de los gastos incurridos en la atención del obrero lesionado. Este razonamiento es claramente aplicable a la situación prevaleciente en Puerto Rico. Nada hay en nuestra ley que justifique hacer esa excepción. El hecho de que en este caso el Fondo no se subrogara en la acción del obrero no altera la situación. *Cf. Montes* v. *Fondo del Seguro del Estado*, 87 D.P.R. 199 (1963), donde impusimos responsabilidad al Estado por practicar una operación sin el consentimiento del obrero que sufrió un accidente del trabajo y donde expresamos, a la pág. 208, que "[e]l hecho de que el obrero [fuera] compensado por el Fondo en forma alguna derrota su derecho a que se le indemnice por la intervención quirúrgica que se le practicó sin su consentimiento. La exclusividad del remedio provisto por la Ley de Compensaciones por Accidentes del Trabajo, es por la lesión sufrida en el trabajo; y a ese efecto se dispone que 'el derecho . . . establecido para obtener compensación será el único remedio contra el patrono' . . . mientras que la acción ejercitada en el presente caso se origina en la actuación del Fondo en someter al recurrente a una operación sin su consentimiento". En este caso nada hay en la ley que justifique conceder al médico que agravó la condición del ojo del obrero una inmunidad que la ley no le concede.

Siendo esto así es evidente que la acción ejercitada por el obrero no está prescrita.

*Se expedirá el auto y se dictará sentencia que modifique la resolución recurrida en el sentido de determinar que la acción incoada por la sociedad de gananciales y por la esposa del demandante están prescritas, y así modificada se confirmará.*

El Juez Asociado Señor Díaz Cruz emitió opinión disidente.

—O—

Opinión disidente del Juez Asociado Señor Díaz Cruz.

Al obrero demandante le cayó tierra en un ojo en el curso de su trabajo el día 8 febrero, 1979. Se lavó y continuó la labor, mas como el ojo le siguiera molestando acudió por iniciativa propia al dispensario de emergencia del Hospital del Maestro donde le atendió el oftalmólogo demandado doctor Maestre. Por un mes —de 8 febrero a 7 marzo, 1979— se trató con dicho médico de práctica privada y como no mejorara, éste lo refirió al Fondo del Seguro del Estado, en cuyo hospital le informaron en marzo de 1979 que perdería el ojo por no haberse descubierto a tiempo un hongo causante de la infección. A dicho diagnóstico siguió la pérdida del ojo derecho afectado por enucleación quirúrgica. El Fondo del Seguro del Estado aceptó el accidente como compensable y otorgó la compensación que correspondía a la incapacidad parcial permanente antes dicha. Con conocimiento del daño por supuesta negligencia del médico privado desde marzo de 1979, no es hasta el 20 noviembre, 1980 —transcurridos un año y 8 meses— que radicó la demanda contra el peticionario doctor Maestre. La defensa de prescripción opuesta por éste fue desestimada en instancia al decidir que por ser la acción una contra tercero causante del daño bajo el Art. 31 ([1]) de la Ley de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. sec. 32, el término para reclamar no corre hasta pasados los 90 días siguientes a la fecha en que fuere firme y ejecutoria la decisión administrativa durante los cuales tiene prioridad

---

([1]) Ordena el Art. 31: "En los casos en que la lesión, enfermedad [ocupacional] o la muerte que dan derecho de compensación al obrero, empleado o sus beneficiarios, de acuerdo con este Capítulo, le hubiere provenido bajo circunstancias que hicieren responsable a tercero de tal lesión, enfermedad o muerte, el obrero o empleado lesionado o sus beneficiarios podrán reclamar y obtener daños y perjuicios del tercero responsable de dicha lesión, enfermedad o muerte dentro del año subsiguiente a la fecha en que fuere firme la resolución del caso por el Administrador del Fondo del Seguro del Estado, y éste podrá subrogarse en los derechos del obrero, empleado o sus beneficiarios para entablar la misma acción. . . ."

el Administrador del Fondo para promover la acción sub-rogatoria.

No fue éste caso de emergencia en que podía el obrero prescindir de la asistencia o servicio médico provisto por el Fondo. El obrero no fue "referido" al oftalmólogo de práctica privada, sino que aquél lo escogió libremente para que le tratara. Su iniciativa le expuso a perder toda com-pensación, pues la Ley dispone esa sanción para el lesionado que no se presentare al médico del Asegurador dentro de los cinco (5) días laborables después de la ocurrencia del acci-dente. Art. 5 (11 L.P.R.A. sec. 6). Esto explica por qué el Fondo no se subrogara —a pesar del apreciable costo de servicios médicos y compensación— al no considerar al médico demandado como tercero responsable del daño, den-tro del concepto del citado Art. 31.

Consecuentemente, la que tenía el obrero lesionado era una acción bajo el Art. 1802 C.C. que debió ejercitar dentro del año de conocido el daño, que le fue informado como hemos dicho en marzo de 1979 en el Hospital Industrial. Como el Fondo no tenía derecho a subrogarse y demandar, el obrero no venía obligado a esperar que transcurrieran 90 días desde que la decisión administrativa fuera firme y eje-cutoria, de lo que resulta que su demanda presentada el 20 noviembre, 1980 es tardía, y su causa de acción está pres-crita.

La intervención del médico demandado no puede con-siderarse *como parte del accidente del trabajo* que por defi-nición expresa en el Art. 2 (11 L.P.R.A. sec. 2), lo limita a aquella lesión, incapacidad o muerte "que [provenga] de cualquier acto o función inherente [al] trabajo o empleo y que [ocurra] en el curso de éste, y como consecuencia del mismo o por enfermedades o muertes derivadas de la ocu-pación . . .".

Se extiende compensación de accidente laboral al agra-vamiento de una previa condición, mas no hemos encon-trado precedente o criterio en las autoridades que atribuya

condición de tercero responsable a un médico de práctica privada cuyos servicios solicita el lesionado y que por su intervención produce una agravación post-accidente.

En ausencia de legislación especial como la de Puerto Rico, 26 L.P.R.A. sec. 4101 y ss., se ha sostenido que un médico que agrava negligentemente la lesión producida por el accidente es tercera parte responsable sólo cuando presta servicios dentro del sistema de seguro especial para obreros, esto es, cuando es médico provisto por el Asegurador. 2A *Larson's Workmen's Compensation Law*, Secs. 72.60–72.65(e), págs. 14-196–14-224; 3 *Schneider's Workmen's Compensation* (Text), Secs. 841, 842(b), págs. 209, 212; Blair, *Reference Guide to Workmen's Compensation Law*, Sec. 24:10, pág. 24-35. Estas mismas autoridades ofrecen un criterio en decadencia (seguido en algunas decisiones) al efecto de que el médico del sistema es un co-empleado del patrono, y por tanto, inmune a la acción de daños.

*Hancock* v. *Halliday*, 150 P.2d 137 (1944), una extensa decisión de Idaho que recoge los criterios de responsabilidad bajo un estatuto similar al nuestro, en la que descansa la opinión como autoridad, [2] es adverso a la norma propuesta en varios aspectos esenciales: 1) Al igual que Larson, Schneider y Blair considera al médico tercera persona responsable por su mala práctica que agrava el accidente, si es médico bajo contrato con el asegurador. (El aquí recurrente no era tal, y sí un médico de práctica privada escogido por el lesionado.) 2) Rechaza la proposición de que el médico sea absuelto por no ser propiamente el tercero responsable que contempla el estatuto, pero deja la acción por negligencia enteramente en manos del perjudicado, quien deberá ejercitarla sin más restricción que la impuesta por el Derecho civil común. (El lesionado Whitmarsh no estaba cohibido por el período de espera que nuestro estatuto provee para iniciar la acción subrogatoria.) 3) *Hancock*

---

[2] La sentencia descarta a Larson, Schneider y Blair aquí citados.

sostiene que si la compensación concedida al obrero incluye el daño sufrido como consecuencia de la negligencia del médico —privado o bajo contrato— el asegurador puede recuperar del médico lo pagado al obrero, no para beneficio de éste, que ya está pagado, sino para resarcirse de su erogación, y advierte que en tal caso el obrero ninguna acción tendría contra el médico pues conllevaría un doble pago por éste. (En el caso de autos el daño original fue insignificante, y prácticamente toda la compensación concedida por pérdida del ojo está vinculada a la negligencia del médico. *Hancock* considera que en tales circunstancias, el obrero que reclamó y recibió del asegurador compensación por el daño originado en mala práctica médica eligió el remedio y está impedido de gestionar doble indemnización, aun cuando estuviere dentro del término prescriptivo para accionar.) Esta conclusión de *Hancock* en que busca apoyo la opinión de mayoría —si bien disocia y separa correctamente las dos causas de daño— es particularmente opresiva para el trabajador lesionado que usualmente no tiene medio de separar o identificar los distintos conceptos de resarcimiento en la compensación que le otorga el Fondo. Es de mayor justicia acoger la demanda del lesionado, *si está en tiempo* y de prosperar la acción por cuantía mayor a la ya pagada por el asegurador, restituir a éste la porción determinable de compensación por negligencia médica, a cuyos fines tendría el Asegurador derecho a intervenir en la acción civil personal del compensado contra su médico. *Cf. Vélez Sánchez* v. *Comisión Industrial,* 107 D.P.R. 797, 803 (1978).

La causa de acción del demandante contra su médico prescribió —cuanto más tarde— el 16 marzo, 1980 día en que se cumplió el año de enucleación(³) por cirugía de su ojo

---

(³) Con igual fundamento podría sostenerse la fecha anterior de 7 marzo, 1980 como final del plazo para accionar, pues el demandante Whitmarsh admitió en deposición tener conocimiento del daño desde el 7 marzo, 1979 en que el doctor Velasco, del Hospital Industrial le dijo que la condición del ojo se debía a que no

derecho, evento que del modo más convincente hubo de llevar a su ánimo y conocimiento la realidad del daño sufrido y que él atribuye a negligencia del médico.

Procede la moción para desestimar formulada por el médico y cuya denegatoria por la sala de instancia motivó nuestra orden para mostrar causa.

La acción de daño por negligencia del médico (*malpractice*) en el aspecto de término para su ejercicio está regulada no por el Art. 1868(2) C.C., sino por ley especial titulada Ley de Profesionales en el Cuidado de Salud, Núm. 74 de 30 mayo, 1976 inserta en el Código de Seguros, 26 L.P.R.A. sec. 4101 y ss., que en su Art. 41.090 ordena:

*Términos de prescripción*

(1) Los términos de prescripción contenidos en esta sección *serán los únicos aplicables* a las acciones de daños por culpa o negligencia (*malpractice*) que se inicien contra profesionales en el cuidado de salud e instituciones para el cuidado de salud.

La acción por alegados daños por culpa o negligencia (*malpractice*) *comenzará, independientemente de lo dispuesto en otra ley*, dentro de un año a partir de la fecha en que ocurrió el daño que dio lugar a la acción, o *dentro de un año desde el momento en que el daño fue descubierto o debió haber sido descubierto con la debida diligencia*. En ningún caso se podrá iniciar la acción más tarde de dos años, desde la fecha en que ocurrió el daño que dio lugar a la causa de acción. (Énfasis nuestro.)

El transcrito texto no deja dudas de que su norma ocupa, con exclusión de toda otra, la regulación del término prescriptivo en acciones por negligencia médica.

El escaso debate que ha merecido esta cuestión entre comentaristas y tribunales norteamericanos, como hemos visto ha sido adjudicado por legislación en Puerto Rico. Presenta este caso dos relaciones o escenarios completamente

---

había recibido tratamiento adecuado, deficiencia que se intentó corregir —sin éxito— mediante un trasplante de córnea el 15 marzo, 1979.

aislados e identificados aparte: el contrato privado de servicios médicos entre el lesionado y el oftalmólogo recurrente; y el seguro obligatorio que cubre los accidentes laborales. El simple hecho de que el obrero, en vez de reclamar en el término de cinco días los servicios médicos del Fondo del Seguro del Estado, optara por tratarse con un médico de práctica privada, no ingresa a éste automáticamente en la órbita del seguro compulsorio, ni puede de ningún otro modo privarle de sus derechos bajo el estatuto de prescripción que con claridad extrema ordena que *independientemente de lo dispuesto en otra ley* [4] la acción de daños comenzará dentro de un año a partir de la fecha en que el daño fue descubierto o debió haber sido descubierto con la debida diligencia. 26 L.P.R.A. sec. 4109(1). Esa protección del estatuto especial de prescripción de la acción por negligencia contra el médico no desaparece por la simple magia del contacto con un caso de accidente del trabajo, ni puede el derecho del recurrente a la seguridad y certeza que le brinda la ley especial, sucumbir y encontrarse de pronto envuelto por succión en un orden de seguro compulsorio establecido no para médicos en la práctica privada sino para empleados que se lesionan en el curso de su trabajo. Según la ponencia, el médico de práctica privada, para preservar su estatuto de prescripción, deberá negar sus servicios a un obrero que los solicita en circunstancias de emergencia. Un anacrónico y lastimoso regreso a la figura del intocable hindú que nadie quería tener cerca.

La insistencia de la mayoría en convertir al médico privado en *parte del accidente* porque no rechazó a quien a él vino en busca de alivio, hay que tomarla como imponiendo al médico particular la obligación de rechazar y alejar de sí al obrero que solicita sus servicios, como único modo de preservar el estatuto de prescripción del médico.

---

[4] Recuérdese que la citada Ley de Responsabilidad Profesional Médico-Hospitalaria ordena que sus términos de prescripción serán los únicos aplicables a las acciones por negligencia contra médicos.

La posición de la mayoría reclama apoyo, no en Larson, Schneider y Blair, citados en la opinión disidente, sino en unas decisiones de cortes locales norteamericanas que no sabemos qué estatutos interpretan ni se expresa razón para su discrepancia con las autoridades citadas. Insisto en que debemos guiarnos por nuestros propios razonamientos, por el vigor intelectual nativo, con prioridad a expresiones de oscuro origen. Reiteramos que la prescripción en los casos de negligencia médica se rije por Ley de 1976 que con lenguaje explícito desplaza la de Compensaciones a Obreros, tanto por razón de cronología como por su naturaleza de ley especial. Y con ser esta premisa tan ineluctable y final, no dudo que algún magistrado de las Rocallosas o Apalaches cuya jurisdicción tiene un ordenamiento legal distinto, diga lo contrario. Yo prefiero descansar en los recursos propios aplicados al estado de derecho conocido.

Toda vez que estamos en conocimiento de todos los hechos del caso, especialmente de que no hubo "referido" por el patrono ni por el Fondo al médico privado, y sí selección de éste como su médico particular, (extremo crítico aseverado por el propio actor a la pág. 2 de su demanda; y vuelto a admitir a la pág. 7 de su escrito-contestación a orden para mostrar causa) no hay necesidad de ulterior depuración de hechos relevantes. Procede seguir el curso intimado en nuestra orden para mostrar causa, anular la resolución de instancia, y desestimar la demanda por razón de prescripción.

La acción tardía debe ser desestimada no sólo por la inercia e inactividad del demandante, sino porque la prescripción es parte de la protección de ley y del debido proceso que corresponde al médico demandado bajo el estatuto especial citado.

Con estos antecedentes y fundamentos, consistente con el criterio intimado en la orden para mostrar causa, expediría el auto y desestimaría la demanda.