# 2003 DTA 71

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL I DE SAN JUAN**
**PANEL II**

RECEIVED
SEP 1 5 2003
SERIALS DEPT.
HARVARD LAW SCHOOL LIBRARY

MIGUEL A. CRUZ VILLANUEVA, ETC.
Demandantes

v.

CORPORACION DEL CENTRO DE BELLAS ARTES, ETC.
Demandado y Demandante
Contra Tercero-Apelante

v.

FELIX VEGA; FERNANDO AGUILU; PROMOTORES LATINOS, ETC.
Terceros Demandados Apelados

Núm. KLAN-02-00589

San Juan, Puerto Rico, a 10 de abril de 2003

Panel integrado por su Pesidenta, la Juez Rodríguez de Oronoz,
la Juez Peñagarícano Soler y la Juez Bajandas Vélez

Bajandas Vélez, Juez Ponente

KGV
74
Aor...
v. 7
pt. 1

## TEXTO COMPLETO DE LA SENTENCIA

Comparece ante nos la apelante Corporación del Centro de Bellas Artes solicitando la revocación de la sentencia parcial emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI), el 25 de marzo de 2002 y archivada en autos el 16 de mayo de 2002. Mediante la misma, el TPI desestimó la demanda de terceros presentada por la apelante en contra de los terceros demandados el Sr. Félix Vega, el Sr. Fernando Aguilú y Promotores Latinos.

Analizados cuidadosamente los escritos de las partes, los documentos que se incluyen en el Apéndice y el derecho aplicable, resolvemos revocar la sentencia parcial únicamente en cuanto desestimó la demanda de tercero respecto a Promotores Latinos y así modificada; confirmar.

### I

El 8 de septiembre de 1995, el Sr. Miguel Angel Cruz Villanueva (Cruz Villanueva) y Sandra Apellániz Barreto ■ presentaron una demanda de daños y perjuicios en contra de la Corporación del Centro de Bellas Artes (la CCBA) y la "*Aseguradora 'A'*", la que fue enmendada el 2 de julio de 1997. En esencia, alegaron que el 10 de agosto de 1992, el Sr. Cruz Villanueva sufrió un accidente en el escenario de la Sala de Festivales del Centro de Bellas Artes, localizado en Santurce, Puerto Rico, mientras pintaba unos bastidores para el espectáculo teatral "*Desconcierto*" de Awilda Carbia. Adujeron que el codemandante había sido contratado por Promotores Latinos, a través de los subcontratistas Sres. Félix Vega (Vega) y Fernando Aguilú (Aguilú). Expusieron que Cruz Villanueva es un reputado artista plástico y pintor.

Los demandantes explicaron que cuando el Sr. Cruz Villanueva llegó el día de los hechos al Centro de Bellas Artes, los aludidos bastidores estaban acostados en el escenario, en vez de estar en el taller de escenografía, que es el lugar destinado para pintarlos. Expresaron que el codemandante fue informado de que la razón para tal situación era que el taller de escenografía estaba ocupado con otros objetos y materiales de otras escenografías. Alegaron que la luz provista en el escenario era muy tenue, lo que no le permitió distinguir el piso de los bastidores, pues ambos estaban pintados de color gris, ni la humedad de la pintura. Sostuvieron que tales factores combinados ocasionaron que el demandante resbalara al caminar sobre uno de los bastidores, golpeándose con fuerza con el filo del bastidor en la cadera izquierda, lo que le ocasionó serios daños. Particularizaron que el encargado del mantenimiento de la sala había encendido algunas lámparas, al notar cuán pobre era la iluminación del lugar y que lo había hecho en calidad de favor al codemandante porque alegadamente las normas del Centro de Bellas Artes no permitían que se utilizara la luz para tales propósitos. Reclamaron que por la actuación u omisión negligente de la demandada CCBA éstos sufrieron daños y perjuicios montantes a un millón ($1,000,000) de dólares para Cruz Villanueva y dos cientos mil ($200,000) dólares para la Sra. Apellániz Barreto, además de las costas, gastos y honorarios de abogado.

El Sr. Cruz Villanueva fue atendido en el Fondo del Seguro del Estado, a tenor con la Ley de Compensaciones por Accidentes del Trabajo, habiéndose notificado la decisión final de la agencia el 4 de noviembre de 1995.

La CCBA contestó la demanda el 30 de mayo de 1996. Específicamente, negó ser responsable por los daños reclamados por los demandantes. Entre sus defensas afirmativas expuso no tener relación contractual alguna con el codemandante Cruz Villanueva. Además, adujo que Promotores Latinos había contratado con la CCBA el uso de las facilidades del Centro de Bellas Artes y que en dicho contrato se había obligado a relevarla de toda responsabilidad por los daños que pudieran sufrir los empleados de éste mientras laboraran en asuntos relacionados con la actividad a ser presentada por dicha entidad. Señaló que Promotores Latinos también se había responsabilizado con la CCBA, en obtener pólizas de seguro de responsabilidad pública y de la propiedad que cubrieran cualquier daño que ocurriera por razón de la referida actividad.

Con fecha 10 de abril de 1997, la CCBA presentó *"Demanda Contra Terceros"* incluyendo a los Sres. Vega y Aguilú y a Promotores Latinos como terceros demandados. Alegó que Cruz Villanueva había sido contratado por el tercero demandado Vega para pintar los mencionados bastidores, quien, a su vez, había sido contratado por Aguilú para que realizara el trabajo de escenografía. Aclaró que Vega no tenía póliza con el Fondo del Seguro del Estado para cubrir a sus empleados, en la eventualidad de que ocurriera un accidente del trabajo. Precisó que habiendo Aguilú contratado a Vega para los trabajos en cuestión, y éste, a su vez, ser contratado por Promotores Latinos, todos ellos respondían solidariamente de los daños sufridos por Cruz Villanueva.

Respecto al tercero demandado Promotores Latinos, la CCBA precisó que existía un contrato mediante el cual éste, como arrendatario, se había comprometido a proveer las fianzas y pólizas de seguro que cubrieran todos los riesgos posibles, en particular, aquéllos que motivaban la demanda original de Cruz Villanueva. También señaló que Promotores Latinos se obligó a incluir al Centro de Bellas de Artes como asegurado adicional en dichas pólizas y fianzas. Asimismo, alegó que el aludido tercero demandado asumió toda responsabilidad por las reclamaciones de cualquier persona lesionada y se comprometió a descargar o relevar a la CCBA de toda responsabilidad que se le reclamara.

De este modo, la CCBA solicitó que se desestimara la demanda original. Además, suplicó que, en la eventualidad de que la demanda original prosperara, se dictara *"...sentencia declarando con lugar la presente Demanda Contra Terceros y conden[ando] a los terceros demandados solidariamente, a pagar a la parte demandada-demandante contra terceros aquí compareciente, todas las sumas de dinero que ésta [la CCBA] venga obligada a pagar a los demandantes originales ..."*. Apéndice de la Apelante, pág. 12, Apéndice 3.

Con fecha de 16 de julio de 1997, Promotores Latinos presentó contestación a la demanda de terceros, negando tener responsabilidad alguna hacia la CCBA. No obstante, aceptó que la CCBA y Promotores Latinos habían suscrito un contrato de arrendamiento de las facilidades del Centro de Bellas Artes. Como defensa afirmativa adujo que tenía inmunidad patronal tanto por las alegaciones de la demanda original como por las de la demanda de terceros. Explicó que la doctrina de patrono asegurado era oponible a la CCBA y que bajo la Ley de Compensaciones por Accidentes del Trabajo un patrono asegurado no le respondía al obrero por el accidente que este último sufriera, aunque mediara negligencia del patrono. Aclaró que al no poder ser el patrono un codemandado directo, éste tampoco respondería de manera indirecta como un tercero demandado, ni podría la CCBA resarcirse del patrono como un colaborador del daño. ■

Por su parte, en su contestación a la demanda de tercero, los terceros demandados Aguilú y Vega también reclamaron inmunidad por ser patronos estatutarios, conforme a la Ley de Compensaciones por Accidentes del Trabajo, pues Promotores Latinos había obtenido una póliza del Fondo del Seguro del Estado. Apéndice de la Apelante, pág. 136, Apéndice 20.

Mediante escrito fechado 4 de septiembre de 1997, Promotores Latinos solicitó Sentencia Sumaria. Expuso que de conformidad con la Ley de Compensaciones por Accidentes del Trabajo, un patrono estatutario, no le respondía al obrero por el accidente, aunque hubiese mediado negligencia de su parte. Argumentó que a tenor con la jurisprudencia vigente, un patrono asegurado no puede ser incluido como un demandado directo, ni responde de manera indirecta como un tercero demandado. Precisó que, por ende, la CCBA no podía demandarlo como un colaborador del daño para ella resarcirse del patrono. Esbozó que a base de tales fundamentos procedía que el TPI dictara sentencia sumaria parcial a su favor.

El tercero demandado Aguilú también solicitó sentencia sumaria el 1ro de octubre de 1997. Argumentó ser patrono estatutario, de conformidad a la póliza adquirida por Promotores Latinos, que, a su vez, cubría a Cruz Villanueva. De igual modo, el tercero demandado Vega se adhirió a lo solicitado por Promotores Latinos, alegando que, al ser subcontratista de dicho tercero demandado, estaba protegido por la inmunidad patronal. Apéndice de la Apelante, págs. 54-58, Apéndice 12.

El 17 de septiembre de 1997, la CCBA presentó *"Réplica a Moción de Sentencia Sumaria"*. Apéndice de la Apelante, pág. 59, Apéndice 13. Expuso que la razón legal por la cual ésta le reclamaba responsabilidad a Promotores Latinos en la demanda de tercero **no** era porque éste fuese un patrono asegurado inmune bajo la Ley de Compensaciones por Accidentes del Trabajo. Aclaró que desde su contestación a la demanda original había alegado que en el contrato de arrendamiento de las facilidades del Centro de Bellas Artes, Promotores Latinos se había obligado a relevar a la CCBA de toda responsabilidad por los daños que pudieran sufrir los empleados de éste mientras laboraran en asuntos relacionados con la actividad a ser presentada. Véase Apéndice de la Apelante, pág. 6, Apéndice 2, Defensa Afirmativa Núm. 4. Además, manifestó que en la Defensa Afirmativa Núm. 5 había aducido que Promotores Latinos se había obligado a obtener pólizas de seguro de responsabilidad pública y de la propiedad para cubrir cualquier daño que ocurriera por razón del espectáculo a ser presentado. También precisó que en el contrato de arrendamiento Promotores Latinos se obligó expresamente a relevar a la CCBA de toda responsabilidad por los daños que pudieran sufrir sus empleados.

Finalmente, amparándose en lo resuelto en *Vélez v. Halco Sales, Inc.,* 97 D.P.R. 438 (1969), argumentó que, igual que sucedió en dicho caso, estaba tratando de hacer valer su derecho a que, de dictarse una sentencia adversa a la CCBA, Promotores Latinos viniera obligado a cumplir con sus obligaciones contractuales, incluyendo la de indemnizarla.

En su escrito de *"Dúplica"* de 5 de noviembre de 1999, ■ los terceros demandados reiteraron tener inmunidad como patronos asegurados y estatutarios. Respecto a *Vélez v. Halco Sales, supra,* indicaron que las cláusulas del contrato con la CCBA referentes a las pólizas o fianzas que Promotores Latinos debía obtener como arrendatario, al igual que aquéllas sobre el relevo de responsabilidad, no tenían el efecto ni el alcance de una renuncia a tal inmunidad. Expresaron, asimismo, que la póliza o fianza exigida se dirigía únicamente a cubrir y asegurar *"pérdidas resultantes como consecuencia directa o indirecta de la apropiación, hurto, vandalismo u otro tipo de daño ocasionado a la propiedad mueble o inmuebles del Centro de Bellas Artes"*. ■

De igual modo, adujeron que el relevo de responsabilidad incluido en el contrato enumeraba expresamente las situaciones ■ para las cuales Promotores Latinos acordó relevar a la CCBA y que la de autos no estaba incluida en ellas, por lo que tampoco se configuraba una renuncia a la inmunidad patronal.

Por último, precisaron que la CCBA le respondía a los demandantes originales por la propia negligencia de ésta y no por aquella atribuible a Promotores Latinos, contra quien no había causa de acción articulable en derecho.

Por moción fechada 30 de mayo de 2000, la CCBA replicó la oposición de los terceros demandados y solicitó también sentencia sumaria a su favor. Reiteró que estaba tratando de hacer valer contra los terceros

demandados ■ una reclamación de tipo contractual, a la luz del contrato de arrendamiento suscrito con Promotores Latinos. Nuevamente, mencionó la obligación del arrendatario de obtener ciertas pólizas y, en particular, la póliza del Fondo del Seguro del Estado, que incluyera el endoso a favor de la CCBA como asegurado adicional o beneficiario.

A tenor con los escritos antes mencionados y luego de la vista argumentativa celebrada el 13 de diciembre de 2001, el 25 de marzo de 2002, el TPI dictó sentencia sumaria parcial declarando con lugar la moción de sentencia sumaria presentada por Promotores Latinos y desestimó la demanda original. El TPI resolvió: (1) que la jurisprudencia ha establecido con claridad que el patrono asegurado no puede ser un codemandado directo, ni responder de manera indirecta como un tercero demandado, y (2) que la demandada CCBA no podía resarcirse del patrono como un colaborador del daño. ■ Aunque no lo determinó expresamente, con dicha sentencia parcial, el TPI desestimó la demanda de tercero de la CCBA, respecto a todos los terceros demandados. Ello, a pesar de reconocer la existencia de las alegaciones de la CCBA respecto al incumplimiento de Promotores Latinos con ciertas cláusulas del contrato de arrendamiento de las facilidades.

Respecto al mencionado contrato entre la CCBA y Promotores Latinos, el TPI resolvió que no era uno de arrendamiento de obras, por lo que la apelante no podía ser considerada patrono estatutario y sí un demandado que podía responderle a la parte demandante original a base del Art. 1802 del Código Civil, 31 LPRA Sec. 5141. Apéndice de la Apelante, pág. 122, Apéndice 17. De este modo, dictaminó que *"con relación al Centro de Bellas Artes, se continuarán los procedimientos hasta la terminación total del caso"*. Apéndice de la Apelante, pág. 124.

Inconforme con la referida sentencia sumaria parcial, el 14 de junio de 2002, la CCBA presentó la apelación de autos, imputando al TPI haber cometido los siguientes errores:

*"1. ERRO EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA, SALA SUPERIOR DE SAN JUAN, AL DICTAR LA SENTENCIA PARCIAL DECLARANDO CON LUGAR LA MOCION DE SENTENCIA SUMARIA SOLICITADA POR LOS TERCEROS DEMANDADOS Y EN CONSECUENCIA DESESTIMAR LA DEMANDA CONTRA TERCEROS PRESENTADA POR EL CENTRO DE BELLAS ARTES, AL APLICAR Y RESOLVER LA RECLAMACIÓN BAJO EL CONCEPTO DE RESPONSABILIDAD O CULPA AQUILIANA DEL PATRONO O A BASE DE LA NEGLIGENCIA DEL PATRONO EX-DELICTO.*

*2. ERRO EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA, SALA SUPERIOR DE SAN JUAN, AL NO RECONOCER EL DERECHO DEL CENTRO DE BELLAS ARTES PARA QUE SE VALIDARA SU RECLAMACIÓN DE TIPO EX-CONTRACTU CONTRA PROMOTORES LATINOS."*

Por resolución de 27 de agosto de 2002, ordenamos a los apelados que presentaran sus respectivos alegatos de oposición en el plazo simultáneo de treinta (30) días. En cumplimiento con la anterior orden, Promotores Latinos presentó su escrito de oposición el 20 de septiembre de 2002, haciendo lo propio el demandante Cruz Villanueva el 30 de septiembre de 2002 y el apelado Aguilú el 1ro de octubre de 2002. Al día de hoy, Vega no ha presentado su oposición.

Teniendo el beneficio de las comparecencias de las partes antes mencionadas, pasamos a resolver.

## II

Como se sabe, la Ley de Compensaciones por Accidentes del Trabajo estableció un sistema social integrado en protección de los empleados que sufrían accidentes laborales. El mismo se predicó sobre la base de una responsabilidad objetiva mediante la cual, independientemente de la negligencia o culpa del patrono en el origen del accidente laboral, los obreros quedaban protegidos mediante una compensación adecuada y el tratamiento médico idóneo. Como parte de dicho sistema, por el pago de una prima de seguro, se le concedió al

patrono inmunidad contra las acciones o remedios del empleado u obrero afectado. Véase Ley Núm. 45 de 18 de abril de 1935, según enmendada por la Ley Núm. 83 de 21 de octubre de 1992, 11 L.P.R.A. Sec. 1 y siguientes; Art. 2, Sec. 16 de la Carta de Derechos del Estado Libre Asociado de Puerto Rico; *Cortijo Walker v. Fuentes Fluviales*, 91 DPR 574, 579 (1964).

De este modo, el Art. 20 de la Ley, 11 L.P.R.A. Sec. 21, provee un remedio exclusivo para los obreros y empleados asegurados que sufren lesiones en el curso del empleo. Así, un trabajador cubierto está impedido de incoar una acción directa contra su patrono para reclamar indemnización por las lesiones sufridas en un accidente ocurrido durante el curso del empleo, no empece la negligencia del patrono en el mismo. Dispone el Art. 20 que *"cuando el patrono asegure sus obreros y empleados de acuerdo con el presente Capítulo, el derecho aquí establecido para obtener compensación será **el único remedio en contra del patrono**, aun en aquellos casos en que se haya otorgado el máximo de las compensaciones o beneficios de acuerdo con el mismo...".* (Enfasis nuestro.) 11 L.P.R.A. Sec. 21.

Por su parte, el Art. 19 de la mencionada ley provee también inmunidad a los contratistas o subcontratistas del patrono o, en la alternativa, al dueño de la obra o el principal, siempre que se haya satisfecho el pago de la prima correspondiente al Fondo del Seguro del Estado. Dispone dicho artículo:

*"Todo patrono asegurado, al dar cuenta con sus nóminas anuales, deberá incluir en tales nóminas los salarios pagados a todos los obreros y empleados que estuvieran trabajando o fuere a emplear bien por ajuste, o ya bajo una persona con quien ajustó el patrono o bajo un contratista o subcontratista independiente empleado o contratado por dicho patrono, y toda cuenta o impuesto cobrado por el Estado se basará sobre la nómina corriente del patrono, en las cuales deberán estar incluidos los trabajadores antes mencionados; Disponiéndose, que esta disposición no será aplicable a los patronos para quienes se hiciere trabajos por un contratista independiente que estuviera asegurado como patrono de acuerdo con las disposiciones de este Capítulo."* 11 L.P.R.A. Sec. 20.

Se desprende de dicho artículo que patrono estatutario *"significa dueños de obras y principales a quienes la ley impone la obligación de asegurar a los empleados de los contratistas o subcontratistas que aquéllos contraten para la ejecución de obras y servicios, cuando los contratistas y subcontratistas no los tengan asegurados". Viuda de Costas v. Puerto Rico Olefins*, 107 D.P.R. 782 (1978). De este modo, la inmunidad patronal no está limitada al patrono estatutario que ha pagado la póliza del Fondo del Seguro del Estado cubriendo a los empleados del patrono verdadero, ni al caso en que el patrono verdadero esté realizando labores que formen parte usual de la actividad del patrono estatutario. *Rodríguez v. Union Carb. Grafito, Inc.*, 107 D.P. R. 848 (1978). Según *Viuda de Costas v. Puerto Rico Olefins, supra*, *"el propósito de esa obligación es que dichos empleados estén asegurados, no importando que el seguro lo pague el contratista o subcontratista, o en la alternativa, el dueño de la obra o el principal. El pago de ese seguro por el contratista, el subcontratista, el principal, o el dueño de la obra, **inmuniza a todos sus patronos contra acciones de daños por los empleados o por el Fondo**. Lugo Sánchez v. AFF, supra, y Colón Santiago v. Comisión Industrial, 97 D.P.R. 208 (1969)".* (Enfasis nuestro.) *Viuda de Costas v. Puerto Rico Olefins, supra*, a la pág. 785.

Por su parte, el Art. 31 de la aludida Ley, 11 L.P.R.A. Sec. 32, concede a los empleados u obreros lesionados el derecho de entablar una acción por daños y perjuicios independiente contra aquellos terceros responsables de los mismos. Véase *Sucesión Sanabria v. White Star Bus Line, Inc.*, 50 D.P.R. 756 (1936); *Whitmarsh Valdés v. Maestre*, 113 D.P.R. 395 (1982). Establece dicho Art. 31 que *"en los casos en que la lesión, enfermedad profesional o la muerte que dan derecho de compensación al obrero, empleado, o sus beneficiarios, hubiere provenido bajo circunstancias que hicieren responsables a un tercero de tal lesión, enfermedad o muerte, **el obrero o empleado lesionado o sus beneficiarios pueden reclamar y obtener daños y perjuicios del tercero responsable de dicha lesión, enfermedad o muerte dentro del año siguiente a la fecha en que fuere firme la resolución del caso por el Administrador del Fondo del Seguro del Estado**, y éste podrá*

*subrogarse en los derechos del obrero, empleado o sus beneficiarios para entablar la misma ...".* (Énfasis nuestro.) 11 L.P.R.A. Sec. 32.

En *Cortijo Walker v. Fuentes Fluviales, supra*, el Tribunal Supremo resolvió que en una acción de daños y perjuicios por la muerte de un obrero de la AFF en el curso del empleo, era improcedente una demanda de tercero contra un patrono asegurado tanto a base de la teoría de la *"contribución"* ▋ como aquélla que postula el derecho de un demandado en daños a ser indemnizado por un tercero demandado en relación con los hechos alegados. Citando al Profesor Larson en *Workers' Compensation Law*, Vol. 2, 1961, el Tribunal Supremo señaló que *"el patrono no le es responsable al obrero en daños, luego no adquiere la condición de un co-causante del daño (joint tort-feasor) conjuntamente con la tercera persona y tercero demandante. La co-responsabilidad del patrono es una absoluta, sin consideración a su negligencia y prescindiendo de ésta, y dicha responsabilidad objetiva es la única que la obliga, fuere él negligente o no. La reclamación o remedio del obrero contra su patrono es únicamente por los beneficios estatutarios; su reclamación contra el tercero es por daños. Ambas razones de pedir son en derecho de distinta categoría y no pueden engendrar una responsabilidad legal en común. (Nota omitida.)"* (Énfasis nuestro.)

Posteriormente, en *Vélez v. Halco Sales, Inc., supra*, el Tribunal Supremo estableció una excepción a la norma sentada en *Cortijo Walker v. Fuentes Fluviales, supra*. Allí, se permitió una demanda de tercero presentada por un demandado responsable en daños (tercero según el Art. 31 de la Ley) contra un patrono asegurado para hacer valer ciertas cláusulas de un contrato de arrendamiento de equipo otorgado entre el patrono y ese tercero presuntamente responsable.

En dicho caso, el Fondo del Seguro del Estado instó acción de subrogación contra Halco Sales, Inc. y su aseguradora, Insurance Co. of North America, por la negligencia de la primera en el mantenimiento de un *winche*, usado en la construcción de un condominio, en el cual bajaba un obrero que sufrió daños incapacitantes. Por su parte, la aseguradora instó demanda de tercero contra el patrono Glenwall de Puerto Rico, Inc., alegando que si bien el *winche* era propiedad de su asegurada Halco, el mismo estaba en poder de la tercera demandada Glenwall en la fecha del accidente, a tenor con un contrato de arrendamiento del equipo suscrito entre Halco y Glenwall. Adujo que, conforme a dicho contrato, la tercera demandada Glenwall asumió responsabilidad plena por cualesquiera daños y perjuicios que surgiesen como resultado del uso o posesión del mencionado equipo. Expuso que por razón de dicho contrato, la tercera demandada Glenwall podía serle responsable a la demandada-tercera demandante Halco por la totalidad o por parte de cualquier suma de dinero que esta última tuviera que satisfacer al obrero lesionado. Señaló además que Glenwall se comprometió en el contrato de arrendamiento a relevar a Halco de responsabilidad por tales reclamaciones. ▋

El Tribunal Supremo resolvió permitir la demanda de tercero presentada con el propósito de que el tercero demandante Halco hiciera valer una reclamación de tipo *ex–contractu* contra el patrono asegurado Glenwall. Precisó que la demanda de tercero no tenía la finalidad de exigir responsabilidad al patrono asegurado por su negligencia *ex–delicto* ni para que este último le respondiera directamente al obrero lesionado. Así, señaló que: *"en las circunstancias dichas, sostener el derecho de la codemandada Halco o de su compañía aseguradora a exigir de Glenwall por vía de una demanda de tercero y en cumplimiento de un contrato, resarcimiento de aquello que Halco viniere obligado a satisfacer al demandante Fondo del Seguro del Estado y al obrero como consecuencia del accidente ocurrido, no es contrario, ni a la norma sentada en Cortijo y otras decisiones nuestras, ni a la política pública envuelta en la Ley de Compensaciones por Accidentes del Trabajo en cuanto a la inmunidad que dicha Ley ofrece a un patrono asegurado causante del daño de su empleado, contra acciones de éste en la esfera cuasi-delictual de la culpa o negligencia".* (Énfasis nuestro.) *Vélez v. Halco Sales, Inc., supra*, a la pág. 445.

Razonó, finalmente, que si ejerciendo su libertad de contratación, un patrono elige asumir una obligación en cuanto a terceros que podrían ser culpables del accidente laboral, ello en nada afectaba la política pública en

torno a la compensación a los obreros ni la inmunidad patronal frente a éstos. Claro está, sujetó tal normativa a que, en cuanto al obrero y al Fondo, se cumplieran las disposiciones de la Ley, las cuales no podían ser modificadas o alteradas contractualmente. *Ibid,* a la pág. 446. ■■■

## III

Aplicada la normativa expuesta a los hechos de este caso según surgen del expediente, concluimos que el TPI incidió al desestimar la demanda de tercero instada por la CCBA en contra de Promotores Latinos. También somos del criterio que las confusas alegaciones ■■■ y argumentos de la apelante han ayudado a encubrir los verdaderos fundamentos que sustentan la reclamación de la CCBA en contra del tercero demandado, Promotores Latinos.

Observamos que la demanda de terceros dirigida contra Vega, Aguilú y Promotores Latinos solicitaba como remedio primario la desestimación de la demanda original del Sr. Cruz Villanueva. Igualmente, peticionaba, en la alternativa, que de prosperar dicha demanda original, se condenara a los terceros demandados solidariamente a satisfacer a la demandante de terceros CCBA, todas las sumas de dinero que ésta viniere obligada a pagar a los demandantes originales. Apéndice de la Apelante, págs. 11 y 12.

Por otro lado, se alegó además en la demanda de tercero que en el contrato de arrendamiento de las facilidades, el arrendatario Promotores Latinos había acordado que le proveería a la CCBA fianzas y pólizas de seguro cubriendo todos los riesgos de la actividad, incluyendo específicamente aquél que motivó la demanda original. Se adujo asimismo que Promotores Latinos se obligó en dicho contrato a incluir a la CCBA como asegurado adicional y acordó relevarla de toda responsabilidad que se le reclamara. Apéndice de la Apelante, pág. 11, Demanda de Tercero, párrafo 12. Tales alegaciones fueron incluidas también en las defensas afirmativas números 4 y 5 de la contestación de la CCBA a la demanda de Cruz Villanueva. Apéndice de la Apelante, pág. 7.

Sin lugar a dudas, se traduce de las anteriores alegaciones, primeramente, que la CCBA incluyó como terceros demandados a los Sres. Vega y Aguilú y a Promotores Latinos con el propósito de que éstos le respondieran como co-causantes del daño sufrido por el Sr. Cruz Villanueva, acorde con el Art. 1802 del Código Civil de Puerto Rico, 31 LPRA Sec. 5141. Esto es, la CCBA reclamó a los terceros demandados la nivelación de su responsabilidad con la presunta negligencia de los terceros demandados. A tenor con la jurisprudencia interpretativa de la Ley de Compensaciones por Accidentes del Trabajo, ello está proscrito, por razón de que los Sres. Vega y Aguilú y Promotores Latinos gozan de inmunidad por cualquier acto u omisión negligente que hubiese contribuido a las lesiones del demandante Cruz Villanueva. En particular, como ha enunciado la jurisprudencia, ni el patrono Promotores Latinos, ni Vega o Aguilú adquirieron la condición de co-causantes del daño. En función de ello, la tercera demandante CCBA carece de causa de acción alguna articulable contra los Sres. Vega y Aguilú y Promotores Latinos por este fundamento.

Ahora bien, conforme a las alegaciones de la demanda de tercero y las defensas números 4 y 5 de la contestación a la demanda de la CCBA, se aduce que Promotores Latinos asumió varias obligaciones en el contrato de arrendamiento, incluyendo suscribir un relevo a favor de la CCBA. Tales obligaciones son las que la CCBA invoca para incluir a Promotores Latinos como tercero demandado. Véase el párrafo número 12 de la demanda de tercero, Apéndice de la Apelante, pág. 11. Esto es, de sus alegaciones resulta evidente que la CCBA ha aducido contra Promotores Latinos una reclamación de naturaleza contractual.

Acorde con nuestro análisis, incidió el TPI al soslayar en la aludida sentencia parcial la reclamación *ex-contractu* articulada por la CCBA. Precisa reiterar que Promotores Latinos está protegido de cualquier reclamación de Cruz Villanueva o de la CCBA bajo el Art. 1802 del Código Civil por virtud de la inmunidad patronal que provee la Ley de Compensaciones por Accidentes del Trabajo. No obstante ello, a la luz de la demanda de tercero, Promotores Latinos podría serle responsable a la CCBA por virtud del contrato de

arrendamiento suscrito entre dichas partes.

De conformidad con las alegaciones de las partes, no hay controversia respecto a que entre Promotores Latinos y la CCBA existe un contrato de arrendamiento mediante el cual Promotores Latinos asumió ciertas obligaciones. Del contrato cuya copia obra en autos surge que entre las obligaciones de Promotores Latinos allí esbozadas están: 1) la de entregar a la CCBA copias fieles y exactas de certificaciones fehacientes de las pólizas de seguro y/o fianzas acordadas 2) que la póliza o fianza expedida a favor de la CCBA cubra pérdidas resultantes como consecuencia directa o indirecta de la apropiación, hurto, vandalismo, u otro tipo de daños ocasionados a la propiedad mueble o inmueble de la CCBA; 3) que obtuviera la póliza del Fondo del Seguro del Estado para el tipo de actividad a presentarse; 4) que toda póliza o fianza requerida a Promotores Latinos cubriera aquellos riesgos, pérdidas o daños que se ocasionaran en todas las áreas que comprendieran el Centro de Bellas Artes; 5) un endoso a favor de la CCBA, como asegurada adicional o beneficiaria, que la protegiera contra toda reclamación por pérdida o daños sobrevenidos; 6) que tal cubierta se ofreciera independientemente de cualquier otra póliza de seguro que cubriera al Centro de Bellas Artes; y 7) un relevo de responsabilidad mediante el cual Promotores Latinos eximiera de responsabilidad al arrendador por los daños que éste, sus agentes, empleados o contratistas sufrieren como resultado de ciertos eventos. 

El TPI actuó correctamente al desestimar la demanda de tercero respecto a Félix Vega y Fernando Aguilú, puesto que éstos, como patronos estatutarios con relación al Sr. Cruz Villanueva, no suscribieron, ni en forma alguna, se obligaron contractualmente con la CCBA. Unicamente fue parte de dicho acuerdo Promotores Latinos y sólo en virtud de tales obligaciones y cláusulas es que Promotores Latinos debe permanecer como tercero demandado en el caso, pero **solamente** en función de las **obligaciones contractuales** asumidas hacia la CCBA en el contrato de arrendamiento.

Por último, contrario a lo que los apelados argumentan, la permanencia de Promotores Latinos en el pleito no es una forma de eludir la inmunidad patronal de que éste goza. La base o fundamento para que Promotores Latinos permanezca en el pleito como tercero demandado es **exclusivamente** el contrato de arrendamiento. La obligación de Promotores Latinos hacia la CCBA no puede surgir del derecho de nivelación que se permite a los co-causantes del daño, porque la Ley de Compensaciones por Accidentes del Trabajo inmuniza a Promotores Latinos de responsabilidad por dicho concepto.

En resumen, resolvemos que a la apelante CCBA le asiste el derecho a que se ventile su causa de acción *ex-contractu* contra Promotores Latinos, que adujera en la demanda de tercero. Le corresponde, pues, al TPI atender y oportunamente resolver en los méritos dicha controversia.

## IV

Por los fundamentos expuestos, se deja sin efecto aquella parte de la sentencia parcial emitida el 25 de marzo de 2002 que desestimó la demanda de terceros presentada por la Corporación del Centro de Bellas Artes contra el tercero demandado Promotores Latinos. Así modificada, se confirma.

Lo acordó y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

**ESCOIOS 2003 DTA 71**

**1.** El 26 de agosto de 1997, la codemandante Sandra Apellániz Barreto desistió con perjuicio de su reclamación porque estaba prescrita. Apéndice de la Apelante, pág. 127.

**2.** En el expediente aparece una segunda contestación de Promotores Latinos a la demanda contra terceros de fecha 30 de

julio de 1997, la que, por su texto, deducimos provino de su compañía aseguradora.

**3.** Dicho escrito fue presentado en respuesta de una orden emitida por el TPI en la vista que sobre la moción de sentencia sumaria se celebrara el 9 de septiembre de 1999.

**4.** Apéndice de la Apelante, pág. 71.

**5.** Tales como, desperfectos o errores en la venta de boletos y la interrupción de energía eléctrica.

**6.** Advertimos que del expediente se desprende que la Corporación del Centro de Bellas Artes suscribió un contrato de arrendamiento únicamente con Promotores Latinos. Los Sres. Vega y Aguilú no contrataron directamente con la apelante.

**7.** Mediante dicha sentencia sumaria parcial, el TPI desestimó la demanda original respecto a Promotores Latinos, Félix Vega, Fernando Aguilú y Rafo Muñiz, por éstos ser patronos estatutarios. Además, el 28 de febrero de 2002, archivada en autos el 16 de mayo de 2002, el TPI dictó otra Sentencia Parcial Final declarando con lugar una solicitud de sentencia sumaria de la Asociación de Garantías de Seguros Misceláneos de Puerto Rico, aseguradora de Promotores Latinos, y desestimó otra demanda contra tercero radicada por Universal Insurance Company, aseguradora de la CCBA. Expresó que *"[l]a posición de la Asociación de Garantías es que, no estando en controversia que la Corporación de Bellas Artes tenía una póliza con Universal Insurance Company que cubre el accidente que motiva esta demanda y que estaba en toda su fuerza y vigor para la fecha en que ocurre (sic) los hechos de la misma el día 10 de agosto de 1992, y que Bellas Artes insta la Demanda Contra Tercero por encomienda de Universal Insurance Company, que sería la llamada a pagar la sentencia contra Bellas Artes en la eventualidad de que el demandante prevalezca, entonces la Demanda Contra Tercero en realidad se trata de una subrogación de una aseguradora contra la Asociación de Garantías, prohibido por el artículo 38.050 del Código de Seguros y que, por ende, como la Asociación atiende únicamente reclamaciones cubierta (sic) y no siendo la reclamación de Universal Insurance Company una cubierta, procede la desestimación de la Demanda Contra Tercero."* Apéndice de la Apelante, pág. 129.

**8.** Según definida en dicho caso, la teoría postula que un co-causante del daño viene obligado a responder a otro co-causante por los daños sufridos por el demandante.

**9.** La cláusula de relevo en *Vélez v. Halco Sales, supra*, rezaba: *"The Lessee/Buyer assumes all responsibility for claims asserted by any person whatever growing out of the erection and maintenance, use or possession of said equipment and agrees to hold Halco harmless from all such claims." Vélez v. Halco Sales, supra*, a la pág. 445.

**10.** En el aspecto procesal, la jurisprudencia ha señalado que la Regla 12.1 de Procedimiento Civil, 32 LPRA Ap. III, R.12.1, sobre la demanda de tercero, se debe interpretar liberalmente, pues su propósito es facilitar la resolución pronta y económica de pleitos múltiples que puedan surgir de unos mismos hechos. *Colón v. Cooperativa de Seguros Múltiples de Puerto Rico*, 111 D.P.R. 568 (1981). También se ha resuelto que la regla no extiende o limita derechos sustantivos. *Ibid.* Su uso, a tenor con las disposiciones de la Ley de Compensaciones por Accidentes del Trabajo, también ha sido reconocida. *Vélez v. Halco, supra*. Particularmente, en *Chico Ramos v. Editorial Ponce, Inc.*, 101 D.P.R. 759, 779-780 (1973), se resolvió que la acción de tercero es el vehículo procesal para hacer valer derechos de tipo *ex–contractu*. Véase Cuevas Segarra, José A., *Tratado de Derecho Civil*, Tomo 1, Ed. 2000, **Publicaciones JTS**, pág. 305 y la pág. 1609.

Recientemente en *Szendrey v. Hospicare, Inc.*, **2003 JTS 25**, Op. de 14 de febrero de 2003, el Tribunal Supremo analizó la Regla 12.1 de Procedimiento Civil. Indicó que *"... la reclamación contra tercero sólo procede cuando su responsabilidad sea contingente al resultado de la acción principal o cuando el tercero le sea 'secundaria o directamente responsable al demandante'."* (Cita omitida.), **2003 JTS 25**, pág. 586. No obstante, el Tribunal Supremo también expresó que *"[l]a procedencia de la demanda contra tercero depende, por lo tanto, de un análisis práctico de los hechos en el cual es necesario caracterizar la responsabilidad del o de los demandados restantes; ...". Id.*, a pág. 587. Somos del criterio que en el caso ante nos la demanda de tercero es el vehículo procesal sancionado por *Vélez v. Halco Sales, supra*, para que un demandado incluya al patrono (aunque esté cobijado con inmunidad), para que le responda por una acción *ex contractu* que surge entre el patrono y el tercero. Véase Cuevas Segarra, *Op. cit.*, pág. 309.

**11.** Véase la contestación a la demanda de la CCBA. Apéndice de la Apelante, pág. 6, Apéndice 2 y los escritos de ésta en oposición a la moción de sentencia sumaria de Promotores Latinos. Apéndice de la Apelante, pág. 57 y 75, Apéndice 13 y 15,

respectivamente.

**12.** Véase Apéndice de la Apelante, pág. 100. La cláusula sobre pólizas de seguro y fianzas indica lo siguiente:

*"1. EN GENERAL: EL ARRENDATARIO vendrá obligado a entregar al CENTRO DE BELLAS ARTES copias fieles y exactas o certificaciones fehacientes de las pólizas de seguro y/o fianzas, que se identifican en los párrafos subsiguientes, expedidas bajo los términos y condiciones requeridas en las 'Normas', con por lo menos diez (10) días de antelación a la fecha que EL ARRENDATARIO habría de utilizar por primera vez la 'Facilidad' u otras dependencias, ya sea para los ensayos, el montaje, la preparación o la presentación de la 'Actividad", lo que ocurra primero.*

*2. SEGURO DE RESPONSABILIDAD PUBLICA: La póliza de responsabilidad pública deberá cubrir y asegurar contra daños corporales y a la propiedad de terceras personas, incluyendo a público asistente a la 'Actividad', en toda fecha que la misma se presente. Dicha póliza tendrá límites de responsabilidad agregada de no menos de quinientos mil ($500,000.00) dólares; límite de responsabilidad de cincuenta mil ($50,000.00) dólares por fuego ("Fire Legal Liability"); y límite de responsabilidad de cinco mil ($5,000.00) dólares para gastos médicos.*

*3. POLIZA o FIANZA CUBRIENDO DAÑOS AL CENTRO DE BELLAS ARTES: La póliza o fianza expedida a favor del CENTRO DE BELLAS ARTES deberá cubrir y asegurar contra pérdidas resultantes como consecuencia directa o indirecta de la apropiación, hurto, vandalismo, u otro tipo de daños ocasionados a la propiedad mueble o inmueble del CENTRO DE BELLAS ARTES que sea atribuible a la 'Actividad' o al ARRENDATARIO, sus agentes, empleados, contratistas, artistas o invitados de éste. Dicha póliza o fianza tendrá una cobertura no menor a la cantidad total del canon de arrendamiento establecido en este Contrato.*

*4. POLIZAS DEL FONDO DE SEGURO DEL ESTADO: EL ARRENDATARIO deberá gestionar y obtener la póliza o pólizas que el Fondo del Seguro del Estado requiera para el tipo de 'Actividad' a celebrar, la cual deberá cubrir y asegurar contra los daños que puedan sufrir sus empleados, todo su personal técnico, artístico o administrativo mientras éstos permanezcan o laboren en el CENTRO DE BELLAS ARTES en cualquier asunto directa o indirectamente relacionado con la 'Actividad'.*

*5. PAGO DE LA PRIMA DE SEGURO: EL ARRENDATARIO deberá suministrar al CENTRO DE BELLAS ARTES evidencia fehaciente de que ha pagado en su totalidad las primas de seguros y/o fianzas requeridas en este Contrato o por las 'Normas', con diez (10) días de antelación a la utilización por primera vez de la 'Facilidad' u otras dependencias, ya sea para los ensayos, el montaje, la preparación o la presentación de la 'Actividad', lo que ocurra primero.*

*6. TERMINO DE LAS POLIZAS: Toda póliza o fianza requerida al ARRENDATARIO en este Contrato o por las 'Normas', se deberá tener un término o período de duración que cubra desde la fecha en que EL ARRENDATARIO habrá de utilizar por primera vez la 'Facilidad' o sus dependencias hasta la fecha en que se haya removido de los predios del CENTRO DE BELLAS ARTES todo vestigio, equipo, utilería, mobiliario, o escenografía utilizado en la 'Actividad', ambas fechas inclusive.*

*7. AREAS CUBIERTAS POR LAS POLIZAS: Toda póliza o fianza requerida en este Contrato o por las 'Normas', deberá indicar que la misma cubre contra aquellos riesgos, pérdidas o daños que ocurran o se ocasionen en todas las áreas que comprenden el CENTRO DE BELLAS ARTES, incluyendo mas no limitado a sus edificaciones, facilidades y áreas públicas tales como el área de estacionamiento y las plazoletas.*

*8. ENDOSOS REQUERIDOS EN LAS POLIZAS: Toda póliza o fianza requerida en este Contrato o por las 'Normas', deberá incluir además, un endoso a favor del CENTRO DE BELLAS ARTES, ya sea como asegurado adicional ("Additional Insured"), o como beneficiario ("Beneficiary" or "Loss Payee"), y que asegure contra toda reclamación por pérdidas o daños sobrevenidos u ocasionados que forme parte de la cobertura de dichas pólizas o fianzas. Dicho(s) endoso(s) a favor del CENTRO DE BELLAS ARTES deberá indicar que la cobertura a su favor se ofrece independientemente de cualquier otra póliza de seguro que pueda cubrir al CENTRO DE BELLAS ARTES contra posibles reclamaciones de terceros por las pérdidas o daños sufridos por éstos. Además, se requiere un endoso en las pólizas mediante el cual la aseguradora se obliga a no cancelar, modificar o alterar de forma alguna su póliza de seguro sin antes notificar por escrito al CENTRO DE BELLAS ARTES con por lo menos treinta (30) días de antelación."*

**13.** Apéndice de la Apelante, pág. 104. La cláusula sobre relevo de responsabilidad señala textualmente lo siguiente:

"*1. LIMITE DE RESPONSABILIDAD: EL CENTRO DE BELLAS ARTES no será responsable por los daños que sufra EL ARRENDATARIO, sus agentes, empleados, contratistas, invitados, o cualquier personal relacionados directa o indirectamente con la "Actividad", como resultado de los siguientes eventos:*

*A.. Desperfectos o errores en la venta computarizada de boletos, anuncios en la pizarra electrónica o sistemas de sonido, iluminación teatral, tramoya y acondicionadores de aire.*

*B. La descontinuación o interrupción de los servicios de la energía eléctrica, agua, o teléfono.*

*C. Daños o pérdidas motivados por o relacionados con vandalismo, fuego, o cualquier otro acto o evento de fuerza mayor.*

*Si la 'Actividad' no puede llevarse a cabo debido a cualquiera de las causas mencionadas anteriormente, entonces EL ARRENDATARIO tendrá derecho solamente al reembolso del importe del canon de arrendamiento y los cargos adicionales pagados por éste a la fecha y hora de la suspensión de la 'Actividad'.*"